**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TERRI D. WRIGHT,** <br><br>            **Plaintiff,** <br><br>     v. <br><br> **EUGENE & AGNES E. MEYER FOUNDATION, et al.** <br><br>            **Defendants.** | Case No. 1:20-cv-02471-KBJ |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7 of the United States District Court for the District of Columbia, Defendants Eugene & Agnes E. Meyer Foundation ("the Foundation") and Nicola Goren ("Ms. Goren") (collectively "Defendants"), through undersigned counsel, submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint.

**I.      INTRODUCTION**

Plaintiff Terri D. Wright ("Plaintiff" or "Dr. Wright") brings this action to recover damages for: (1) race discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981) (against all Defendants); (2) defamation (against Ms. Goren); and (3) breach of contract[1]. This Court must dismiss this action because even taking Plaintiff's allegations as true (which Defendants deny) the Section 1981 claim — Plaintiff's first cause of action —  fails because it is a recast defamation claim, and

---

[1] The Complaint fails to specify against which party Plaintiff is purporting to seek relief in her third cause of action for breach of contract.  For purposes of this Motion, Defendants will assume the third cause of action is against all Defendants.

Plaintiff does not include sufficient facts to make it plausible that Defendants discriminated against her based upon her race. Ms. Goren allegedly made the substantive statements underlying Plaintiff's defamation claim to an individual with a common interest, and therefore a qualified privilege protects the statements. The alleged statements also were expressions of opinion and therefore could not be defamatory.

For these reasons set forth more fully below, Defendants respectfully request this Court dismiss all three causes of action under Fed. R. Civ. P. 12(b)(6).

## II. STATEMENT OF RELEVANT FACTS[2]

The Foundation hired Dr. Wright as Vice President for Program and Community in February 2018. Compl. ¶¶ 12, 14. Defendant Goren is President and Chief Executive Officer of the Foundation. *Id*. ¶ 8. Ms. Goren also serves as Board Chair of a companion organization, the Washington Regional Association of Grantmakers ("WRAG"). *Id*. at 3. During the recruitment process, Plaintiff interviewed with Ms. Goren, the Foundation's Board, and staff members. *Id*. ¶ 14.

In 2019, Ms. Goren informed Plaintiff that the Foundation intended to terminate her employment due to her purported ongoing interpersonal and communication skills. Compl. ¶ 31. The Foundation and Plaintiff negotiated the terms of a severance agreement in October 2019. *Id*. ¶ 33. The agreement contains a Mutual Non-Disparagement Clause, which reads:

> You agree that you have not made and will not make, any false, disparaging or derogatory statements to any person or entity, including any media outlet, industry group or financial institution, regarding the Foundation or any of the releases, or about the Foundation's business affairs and/or financial conditions; provided, however, that nothing herein prevents you from making truthful disclosures to any governmental entity or in any litigation or arbitration. Likewise, the Foundation will direct those officers, directors and employees with direct knowledge of this

---

[2] For purposes of this Motion only, Defendants assume the factual accuracy of the allegations in Plaintiff's Complaint, as required by Rule 12(b)(6).

      revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding you.

Compl. ¶ 34.

      The severance agreement also included a general release that released Defendants from any and all claims," including this lawsuit, "arising out of or relating to [Plaintiff's] employment with and/or separation from the Foundation, including, but not limited to, all claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et al.," as well as "all common law claims including, but not limited to, actions in defamation . . . and breach of contract . . . ." The release went on to make clear that Plaintiff was releasing "not only claims presently known to [her], but also all unknown or unanticipated claims," specifying later "discover[ed] facts different from what you now believe to be true, which if known, could have materially affected this release, but you nevertheless waive and release any claims or rights based on different or additional facts."
*See* Exhibit 1(redacted version of severance agreement).

      Plaintiff alleges that a month after her termination, Ms. Goren, in her capacity as WRAG's Board Chair, met with then WRAG President and Chief Executive Officer Dr. Madye Henson. Compl. ¶ 36.  The Foundation is a contributor to WRAG.  *See* Ex. 2 (Henson Am. Compl. 2). During that meeting, the topic of Plaintiff's departure arose.  *See* Compl. ¶ 36.  Dr. Henson allegedly shared that many leaders in the community were questioning Ms. Goren's motivation for terminating Plaintiff.  *Id.*  In response, Ms. Goren allegedly stated Plaintiff was ""toxic," fostered "a (sic) negative climate" within the Meyer Foundation, and had to be fired or two-thirds of the staff would leave." *Id.* ¶ 37. [3]  Plaintiff contends she learned about the statements when she read the race discrimination (African-American) lawsuit that Dr. Henson later filed against Ms. Goren,

---

[3] Dr. Henson in her Complaint and Amended Complaint attributes the comment "negative climate" to Ms. Goren. Ex. 2 at 4; Ex. 3, Henson Compl. ¶ 45.

WRAG, and others on June 30, 2020. *Id*. at 3. Plaintiff omits from her pleading that Dr. Henson further stated in her Complaint that "Dr. Henson saw this as a stereotypical, pretextual reason for an illegal firing: no objective reasons, simply a personality conflict." Ex. 2 at 4).

### III.   LEGAL ARGUMENT

#### A.   Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court has explained, the purpose of the Rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Hence, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is a complaint that tenders merely "'naked assertion[s]' devoid of 'further factual enhancement'" sufficient to survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Campbell-El v. District of Columbia*, 874 F. Supp. 403, 406 (D.D.C. 1994); *Mills v. Home Equity Group*, 871 F. Supp. 1482, 1484 (D.D.C. 1994).

Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As a result, even a complaint that recites the elements of a cause of action, supported by mere conclusory statements is insufficient. *Id.* Rather, the facts in the complaint must allow the court to reach a reasonable inference that the defendant is liable. *Id.*

At the motion to dismiss stage, and without requiring the conversion to summary judgment, the Court may consider documents that are incorporated into the complaint, whether by being attached to it or expressly relied upon therein. *See, e.g.*, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." (internal citations omitted)); *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65-66 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] to one for summary judgment." (internal quotation and citation omitted)).

Under Rule 8(a)(2) and the case law interpreting and applying it, Plaintiff has failed to plead any causes of action against Defendants.

### B. Plaintiff Has Failed to Establish a Viable Claim for Racial Discrimination in Violation of Section 1981

#### 1. Plaintiff cannot recover for reputational harm under Section 1981.

Plaintiff's section 1981 claim is inherently a cause of action for defamation. The law does not permit a plaintiff to recover defamation-type damages under non-reputational tort or statutory

claims. *See Teltschik v. Williams & Jensen, PLLC*, No. CIV.A. 08-089 BJR, 2012 WL 3960607, at *2 (D.D.C. Sept. 10, 2012) (holding that reputation damages may be sought in an ordinary negligence action, but not in a negligence action where claim sounds in defamation), *aff'd*, 748 F.3d 1285 (D.C. Cir. 2014) (D.D.C. 2012) citing *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 520 (1st Cir. 1990). Accordingly, Plaintiff has not stated a claim of race discrimination under section 1981.

> **2. Even if the Court determines that Plaintiff is not asserting a cause of action for reputational harm, she has failed to state a claim of race discrimination under section 1981.**

Section 1981 provides:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim for racial discrimination under Section 1981, the plaintiff must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981. *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44-45 (D.D.C. 2003). To establish that a defendant interfered with the making, performance, modification, and termination of contracts in violation of section 1981, a plaintiff must "initially identify an impaired contractual relationship . . . under which [he or she] has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "To establish a claim under § 1981, a plaintiff must show that (1) [she is a member] of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Mitchell v. DCX, Inc*. 274 F. Supp. 2d 33, 44-45 (D.D.C. 2003). Ultimately, Plaintiff

must establish a "racially discriminatory purpose for the defendant's misconduct" for the plaintiff to establish a section 1981 claim.  *Ridley v. Dynamic Vision Home Health Services*, 68 F. Supp. 3d 74, 90 (D.D.C. 2014).

Plaintiff must allege enough facts in support of race discrimination to "nudge [her] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *Brown v. Children's Nat'l Med. Center*, 775 F. Supp. 2d 125, 135 (D.D.C. 2011) (to state a claim under section 1981, a plaintiff must allege facts that demonstrate that race was the reason for defendant's actions).  More specifically, the "plaintiff cannot merely invoke . . . race in the course of a claim's narrative and automatically be entitled to pursue relief."  *Apollo v. CVS Pharmacy*, Civil Action No. 17-1775, 2019 WL 147475, at *2 (D.D.C. 2019) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)); *see*, *e.g.*, *Ndondji v. InterPark, Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011) (plaintiff's occasional reference to his race in his complaint was insufficient to make out a section 1981 action); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010) (Section 1981 claim was dismissed where "only suggestion that plaintiff's race or color played any role in her interactions with [defendants we]re plaintiff's conclusory statements that she was terminated . . . based on her race and color"), *aff'd*, 424 Fed. Appx. 10 (D.C. Cir. 2011).  Allegations must be more than just legal conclusions devoid of any factual support; otherwise, they do not meet the *Twombly* pleading standard.  *Mehuria v. Bank of America*, 883 F. Supp. 2d 10, 15 (D.D.C. 2011).  Here, Plaintiff sufficiently pleads a contractual relationship between herself and the Foundation, namely, the October 2019 severance agreement.  *See* Compl. ¶ 3.  However, there is no evidence of a contractual relationship between Ms. Goren and Plaintiff.  *See supra* at 2-3. Moreover, Plaintiff fails to make the case that her rights under the October 2019, severance agreement were impaired.  Her entire contract interference case against Defendants is contained in the following

7

paragraph:

> Plaintiff was disparaged in violation of the terms of the Agreement due to the Defendants' racial animus against African Americans in violation of 42 U.S.C. 1981.

Compl. ¶ 40.  Plaintiff misrepresents the terms of the agreement. Plaintiff had a duty not to disparage, not the Foundation.  The Mutual Non-Disparagement clause prescribes only the following bold-text obligations to the Foundation:

> You agree that you have not made and will not make, any false, disparaging or derogatory statements to any person or entity, including any media outlet, industry group or financial institution, regarding the Foundation or any of the releases, or about the Foundation's business affairs and/or financial conditions; provided, however, that nothing herein prevents you from making truthful disclosures to any governmental entity or in any litigation or arbitration. **Likewise, the Foundation will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding you.**

Compl. ¶ 34 (emphasis added).

Plaintiff does not allege, nor can she, that the Foundation failed to direct employees not to make false, disparaging, or derogatory statements about Plaintiff.  Even if Ms. Goren made disparaging statements about Plaintiff, which Defendants vehemently deny, that would not support a conclusion that the Foundation neglected to issue a directive not to do so.

### C. Plaintiff Cannot State a Defamation Claim Against Ms. Goren Because the Purported Defamatory Statements Were Protected By a Qualified Privilege and Were Subjective

To state a *prima facie* case of defamation under District of Columbia law, Plaintiff must plead: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement is actionable as a matter of law irrespective of special harm, or that its publication caused the plaintiff special harm." *Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004) (citing

8

*Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997)).

> **1.  A qualified privilege protects Defendant Goren from any liability deriving from alleged defamatory conduct.**

The Complaint does not adequately establish that Plaintiff is entitled to relief for defamation against Ms. Goren. Plaintiff has alleged the substance of just one purportedly defamatory statement — "Dr. Wright was "toxic" fostered a "a negative climate" [sic] within the Meyer Foundation and had to be fired or two-thirds of the staff would leave." Compl. ¶ 37. Assuming these comments were made[4], and not truthful, the "common interest" privilege is applicable.

To come within the protection of the qualified privilege based on a common interest, statements must have been (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which she has, or honestly believes she has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest. *Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007) (citing *Ingber v. Ross*, 479 A.2d 1256, 1264, n.8 (D.C. 1984)).

In this case, Ms. Goren, Chair of WRAG's Board of Directors and Dr. Henson, former WRAG CEO and President, were colleagues engaged in a business meeting when Ms. Goren allegedly made the statement. Compl. ¶ 45. Although Plaintiff was not present during the meeting, she claims Dr. Henson informed Ms. Goren that persons within their business community were questioning whether Ms. Goren committed a discriminatory act. *Id*. Taking the facts in the Complaint as true, Ms. Goren's comments attempted to rebut the claim that she terminated Plaintiff in bad faith. *Id*. Certainly, WRAG's Board Chair and CEO have a common interest in Ms. Goren's

---

[4] Plaintiff has embellished on the allegation in Dr. Henson's complaint. Her allegation is only that Ms. Goren stated that Dr. Wright created a "negative climate." *See supra* n.3.

9

reputation in the eyes of community leaders. (citing *Preston v. Land*, 255 S.E.2d 509, 510-11 (Va. 1979) (qualified privilege protected statements of a private club member describing to board of directors alleged behavior of other club members)); *see also Wood v. Am. Fed'n of Gov't Employees*, 316 F. Supp. 3d 475, 482 (D.D.C. June 22, 2018) (qualified privilege applied to allegedly defamatory e-mail concerning matters of legitimate interests to officers, members, and staff of defendant employer). If Ms. Goren made the alleged statements, they fall squarely within the protection of a qualified privilege based on a common interest, and Plaintiff cannot base a defamation claim on that statement.

### 2.     Plaintiff has failed to identify actionable defamatory conduct.

Assuming arguendo, the common interest privilege does not apply, Plaintiff's claim that she was defamed still fails as matter of law because Ms. Goren's alleged statement was subjective opinion. A statement of opinion is actionable if — but only if — it has an explicit or implicit factual foundation and is therefore objectively verifiable. *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 150 (D.D.C. 2015) (citation and internal quotation marks omitted). A non-actionable opinion, by contrast, generally consists of a subjective view, an interpretation, a theory, conjecture, or surmise. *Id.* The trial court's threshold task in an action for defamation is to determine whether the challenged statement is capable of bearing a particular meaning, and whether that meaning is defamatory. *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (citation omitted).

Even if this case were to move into the discovery phase, Plaintiff will be unable to prove or disprove Ms. Goren's belief that Plaintiff created a "negative climate" within the Foundation. If true, this statement amounts to Ms. Goren's opinion regarding Plaintiff's impact on the work environment. This is particularly true where Plaintiff admits that Ms. Goren raised concerns about

her relationship with staff well before Plaintiff's separation.  Compl. ¶¶ 26-27.  Plaintiff could call multiple former staff members as witnesses at a future trial but none could disprove Ms. Goren's purported subjective belief that Plaintiff was having a negative impact on the Foundation.  Further, under D.C. law, a remark is not defamatory unless it is "more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Guilford Transp. Indus., Inc.*, 760 A.2d at 594 (citation omitted).  Stating that Plaintiff created a "negative climate" simply does not rise to the level of "odious" or "ridiculous."  Because it is impossible for Plaintiff to prove her assertion of a defamatory statement within the confines of the law, the Court should dismiss her second cause of action.

### 3. Even if the purposed statement was actionable, Plaintiff did not suffer any harm.

Plaintiff seeks damages for purported reputational harm that Ms. Goren allegedly caused when she allegedly stated to Dr. Henson that Plaintiff fostered a "negative climate."  A plaintiff who prevails on a defamation claim can recover three types of damages — nominal, compensatory or punitive. Compensatory damages are either general or special damages. General damages compensate a plaintiff for harm to her reputation or emotional well-being, *see* Restatement (Second) of Torts § 621 comment a (1977); special damages, on the other hand, are awarded for losses of an economic or pecuniary nature. *See id*. § 575 comment b.

Plaintiff does not allege facts that show she suffered any harm because of Ms. Goren allegedly stating that she created a "negative climate."  In fact, Plaintiff will not be able to demonstrate such harm because Dr. Henson did not believe Ms. Goren's alleged statement. Ex. 2, ¶ 48 ("Dr. Henson saw this as a stereotypical, pretextual reason for an illegal firing: no objective reasons, simply a personality conflict.").  Dr. Henson did not view Ms. Goren's alleged statement as reflecting a defect on Plaintiff's part in her professional capability or integrity. Furthermore,

Plaintiff does not allege Dr. Henson repeated the statement or that anyone read the statement in Dr. Henson's complaint and then took action to Ms. Wright's determinant. Accordingly, even if true, Ms. Goren's statement did not negatively impact her reputation.

### 4. Ms. Goren was not a party to the severance agreement.

The U.S. Supreme Court has held that "it goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Further, this Court has held that non-parties to a contract or settlement agreement are not bound by the terms of such contract or settlement agreement. *Jones v. Quintana*, 872 F. Supp. 2d 48, 57 (D.D.C. 2012). In *Quintana*, the drafters of the settlement agreement "conspicuously left Plaintiff off the list [of signatory parties]" even though they knew of her involvement in the matter, which was evidenced by Plaintiff being consistently labeled as "the grievant" throughout the agreement. *Id*. Accordingly, this Court found that the plaintiff was not a party to or otherwise bound by the settlement agreement because the plaintiff was "clearly not identified as one of '[t]he Parties'" in the document. *Id*. The Court held that "it is a fundamental and unobjectionable principle that a contract cannot bind a non-party — i.e., someone who has not assented to be bound to its terms." *Id*. at 58 n.3. In *Guttenberg v. Emery*, this Court likewise held that one of the defendants "had no duties under a contract to which she was not a party, so she [could not] be liable for any breach [of contract]." 41 F. Supp. 3d 61, 68 (D.D.C. 2014); *see also Charlton v. Mond*, 987 A.2d 436, 441 (D.C. 2010) (granting summary judgment for non-party because "[n]on-parties owe no contractual duty to the contracting parties").

Plaintiff has alleged that "the parties" entered into an agreement. Compl. ¶ 49. Plaintiff further alleges that Ms. Goren signed the agreement. *Id.* The Defendants allegedly breached the terms of the agreement. *Id.* ¶ 50. The Complaint fails to assert sufficiently that Ms. Goren agreed

12

to perform any obligations under the purported settlement agreement.  As Exhibit 1 shows, the Foundation was the only party that agreed to the terms of the agreement.  Ms. Goren in her capacity as President of the Foundation signed the agreement.  There is no indication that Ms. Goren signed in her individual capacity.

Although Ms. Goren was involved in negotiating the agreement, similar to the facts in *Jones v. Quintana*, the agreement undeniably shows that the agreement did not name her as a party nor was she intended to be.  As such, any purported breach of contract claim against Ms. Goren is baseless.

### 5. Plaintiff has not pled sufficient facts to state a breach of contract claim against the Foundation.

For the same reasons discussed above, Plaintiff's breach of contract claim against the Foundation must fail because it is in fact a claim for relief for reputational harm.  In addition, Plaintiff has falsely interpreted Ms. Goren's alleged statement that Plaintiff was "toxic" and created a "negative climate" to be a breach of the severance agreement by the Foundation.  The Foundation's obligation under the Mutual Non-Disparagement Clause was limited to directing Foundation employees and officers not to disparage Plaintiff.  Plaintiff does not allege that the Foundation did not carry out that obligation as the agreement required.  In fact, Plaintiff asserts that Ms. Goren received the direction, when she signed the agreement.  Compl. ¶ 49.  Plaintiff simply has not sufficiently pled that the Foundation breached the terms of the severance agreement.

## IV. CONCLUSION

For the foregoing reasons, Defendants Eugene & Agnes E. Meyer Foundation and Nicola Goren respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice, as set forth in the attached Proposed Order.

Dated: September 10, 2020	Respectfully submitted,

*/s/ Alison N. Davis*
Alison N. Davis (Bar No. 429700)
Patricia Donkor (Bar No. 100455)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006-4006
202-842-3400 Telephone
202-842.0011 Facsimile
ANDavis@littler.com
PDonkor@littler.com

## CERTIFICATE OF SERVICE

I certify that on this 10th day of September 2020, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF system, which caused a copy of the same to be served upon:

> Derek S. Sells
> 55 Broadway, 23rd Floor
> New York, NY 10006
> Dsells@cochranfirm .com
> *Counsel for Plaintiff*

*Patricia B. Donkor*
Patricia B. Donkor

14