IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRI D. WRIGHT,**<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**EUGENE & AGNES E. MEYER FOUNDATION, et al.,**<br><br>　　　　**Defendants.** | **Case No. 1:20-cv-02471-KBJ** |

**DEFENDANTS EUGENE & AGNES E. MEYER AND NICOLA GOREN'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Pursuant to Local Civil Rule 7(d), Defendants Eugene & Agnes E. Meyer Foundation ("the Foundation") and Nicola Goren ("Ms. Goren") (collectively "Defendants"), through undersigned counsel, submit this reply in further support of their Motion to Dismiss ("the Motion").

**I.     INTRODUCTION**

Plaintiff Terri Wright ("Plaintiff" or "Dr. Wright") argues "Defendants attempt to dismiss Plaintiffs (sic) well plead Complaint is without merit."  Opp'n 3, ECF No. 7.  In actuality, as demonstrated in Defendants' Motion, Plaintiff has not satisfied the pleading requirements for her three counts.  First, even taking Plaintiff's allegations as true (which Defendants deny) the Section 1981 claim — Plaintiff's first cause of action — fails because it is a recast defamation claim, and Plaintiff does not include sufficient facts to make it plausible that Defendants discriminated against her based upon her race.  Second, Ms. Goren allegedly made the substantive statements underlying Plaintiff's defamation claim to an individual with a common interest, and therefore a qualified privilege protects the statements.  Third, the alleged statements also were expressions of opinion and therefore could not be defamatory.

Dr. Wright's twenty-nine page Opposition fails to breathe life into her deficient Complaint. The Opposition cites irrelevant case law such as *Dickerson v. District of Columbia* and *Nyambal v. Alliedbarton Security Services, Inc.*, in support of Plaintiff's Section 1981 and defamation claims. Next, it contradicts the very pleadings it attaches to defeat the common interest privilege – the Complaint and Dr. Mayde Henson's Amended Complaint. ECF Nos. 7-2; 7-3. Finally, it requests this Court ignore volumes of contract law precedent in a weak attempt at saving her Section 1981, breach of contract, and defamation claims.

**II.    ARGUMENT**

    **A.    Plaintiff Has Conceded That She Has Not Pled Sufficiently a Claim of Race Discrimination Under 42 U.S.C. § 1981**

        **1.    *Dickerson* is a judicial opinion deciding a Motion to Compel with no relevance to Plaintiff's Section 1981 claim.**

In arguing she may recover defamation-type damages under her 42 U.S.C. §1981 statutory claim, Plaintiff cites *Dickerson v. District of Columbia*, No. CV 09-2213 (PLF), 2019 WL 6910043, at *3 (D.D.C. Dec. 19, 2019). However, a quick glance at the *Dickerson* opinion reveals it relates to a motion to compel a party to supplement his evasive interrogatory responses and produce withheld responsive documents. The issue in that case has nothing to do with whether a plaintiff has stated a Section 1981 claim. *Id*. Further, page three of that decision, does not provide authority in support of Plaintiff's arguments. Opp'n 17. The most cursory review of that page reveals the court is discussing the level of detail plaintiff Dickerson was required to provide when responding to interrogatories under the Federal Rules of Civil Procedure. *See Dickerson*, 2019 WL 6910043, at *3. Page three does not discuss matters that are at issue in this case. In the *Dickerson* opinion, the court even omits a recitation of the causes of action because they were not germane to the narrow discovery dispute it had to decide.

> **2. The Opposition fails to demonstrate that Plaintiff sufficiently pled that the Foundation has denied her the benefits, privileges, terms and conditions of a contractual obligation because of her race under 42 U.S.C. §1981.**

Dr. Wright's efforts to discredit the sound grounds for dismissal of her Section 1981 claim miss the mark. The Opposition fails to shed light on how Plaintiff may sustain a claim that her rights under the October 2019 severance agreement were impaired for purposes of a Section 1981 claim. Plaintiff argues she sufficiently pled facts demonstrating she experienced racial discrimination when Defendants allegedly breached the Mutual Non-Disparagement Clause of the October 2019 severance agreement. To support this argument, Plaintiff reasserts the conclusory statements she made in the Complaint with a focus on the reasons she believes she experienced race discrimination.

To illustrate, the Opposition contends:

- Specifically, Plaintiff alleged that her predecessor, a Caucasian male, Rick Moyers, was not disparaged by Defendant Goren after his termination . . . .
- She allowed him to leave the Foundation on his own terms as to not adversely affect his reputation.
- Plaintiff likewise alleged that no non-African American (sic) employee that was given a severance agreement containing a mutual non-disparagement clause was subsequently disparaged by the Defendants.
- This treatment was not afforded to the Plaintiff despite her stellar performance. Instead, the Plaintiff was abruptly terminated after being discriminatorily paper trailed by Defendant Goren as a pretext to mask Defendant Goren's discriminatory animus . . . .

Opp'n 17.

First, the Opposition does not address Defendants' substantive arguments challenging the alleged contract breach that she contends impaired her rights. When a plaintiff fails to respond to arguments in a motion to dismiss, the law permits a court to grant the motion as conceded *See FDIC v. Bender*, 127 F.3d 58, 67-8 (D.C.Cir.1997) (when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded). This Court should treat Plaintiff's failure to respond to Defendants' argument that she has not sufficiently pled a Section 1981 claim because "Plaintiff does not allege, nor can she, that the Foundation failed to direct employees not to make false, disparaging, or derogatory statements about Plaintiff" as conceded.  Def.'s Mot. to Dismiss 8, ECF No. 4.

To the extent this Court is not inclined to find this basis for dismissal conceded based on Plaintiff's argument later in her Opposition in response to Defendants' Motion to Dismiss Count III (breach of contract) wherein she insists a breach occurred, Defendants have identified several reasons that argument is meritless.  Dr. Wright argues:

> Defendants' argument that the plain meaning of "Mutual Non-Disparagement" really means it was a one-sided term applying only against the Plaintiff is unavailing. Specifically, Defendants suggest that the agreement only required Defendant Goren and the Foundation to "direct those officers, directors, and employees with direct knowledge of this revised letter agreement not to make any false, disparaging, or derogatory statements to any person." Their argument follows that once the warnings are given, then somehow they were shielded from any claim that they breached the mutual non-disparagement clause. This tortured argument makes no sense and is contrary to the law.

Opp'n 23.

The Mutual Non-Disparagement clause reads:

> **Mutual Non-Disparagement: You** agree that **you have not made and will not make, any false, disparaging or derogatory statements** to any person or entity, including any media outlet, industry group or financial institution, **regarding the Foundation or any of the releases, or about the Foundation's business affairs and/or financial conditions; provided**, however, that nothing herein prevents you from making truthful disclosures to any governmental entity or in any litigation or arbitration. **Likewise, the Foundation will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding you.**

Compl. ¶ 34 (emphasis added); Mot. to Dismiss Ex. 1 at 3.  The agreement continues to unambiguously state:

4

> In connection with your separation, **the Foundation provided you with a severance agreement on October 1, 2019 (the "initial severance agreement") that set forth the severance benefits you were eligible to receive. You have since requested changes to the initial severance agreement and the Foundation has agreed to revise certain of the severance benefits it initially offered you as set forth herein (the "revised letter agreement").** . . .
>
> By timely signing and returning this revised letter agreement, **you will be entering into a binding agreement with the Foundation and will be agreeing to the terms and conditions set forth in the numbered paragraphs below**, including the release of claims set forth in paragraph 3. Therefore, you are advised to consult with an attorney of your own choosing before signing this revised letter agreement and you have been given at least seven days to do so.

Excerpts from October 2019, Severance Agreement attached as Exhibit 4.

Plaintiff's effort to create an ambiguity in the agreement several months after signing it is likely rooted in cognitive dissonance that she agreed to a Non-Disparagement Clause, which imposes perceived stricter prohibitions on her. However, Dr. Wright's regrets do not make the terms any less plain, and are contrary to the well-settled law of contract interpretation. *See Hershon v. Gibraltar Bldg. & Loan Ass'n*, 864 F.2d 848, 853 (D.C. Cir. 1989) (stating "it is fundamentally important that parties be able to rely on the explicit language of written contracts[,]" which also furthers the "public interest in certainty and finality" and prevents "every agreement [from being] subjected to collateral attack[.]") As annunciated in *Anzueto v. Wash. Metro. Area Transit Auth.*, Dr. Wright had an obligation to read the agreement, and apparently, she did. 357 F. Supp. 2d 27, 30 (D.D.C.2004)(contending "[I]t is well established that a person has a duty to read a contract before he signs it. If [s]he had the opportunity to read it, [s]he is bound by its terms regardless of whether [s]he thought [s]he was signing an actual contract.")

Construing the allegations in the Complaint as true, as required for purposes of a Rule 12(b)(6) motion, the Foundation initially presented Dr. Wright with the agreement on October 1, 2019. The agreement encouraged her to seek legal advice before accepting the terms by signing

5

the document.  Dr. Wright did not accept the agreement as presented, but sought certain changes.  On October 15, 2019, after the parties reached agreement on her proposed changes, Dr. Wright voluntarily and knowingly signed the agreement.  The explicit language of the agreement states that the Foundation's sole obligation was to inform its officers and directors not to disparage Plaintiff.  There is no allegation in the Complaint that the Foundation failed to carry out its duty because Dr. Wright has no good faith basis for making such an assertion.

Even if Dr. Wright had pled facts to suggest that Defendants had impaired a right under the Severance Agreement, the allegations upon which she relies do not demonstrate that race was the reason for the actions.  Plaintiff does not allege that the Foundation entered into a severance agreement (with a mutual non-disparagement provision) with her purported comparator, Mr. Moyers, or that the Foundation had a policy or practice of offering severance agreements with mutual non-disparagement agreements to all departing employees.  Further, the alleged disparaging comments, which purportedly occurred after the agreement was effective, do not create an inference of racial bias.  Plaintiff's conclusory allegation that purportedly similarly situated individuals of a different race were treated differently also does not save her claim because there are no facts from which to infer that the purported disparate treatment was racially motivated.  All that Plaintiff has is the alleged disparaging comments and the fact that she is African-American, and that is not enough to survive this motion to dismiss.  *See, e.g.*, *Mekuria v. Bank of America*, 883 F.Supp.2d 10, 13-16 (D.D.C. 2011) (Section 1981 claim dismissed because "[a]t the end of the day, Plaintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two.")

**B.     Plaintiff Has Failed to Provide the Court Grounds Not to Dismiss her Defamation Claim.**

   **1.     As the voice of WRAG, Ms. Goren and WRAG's CEO Dr. Henson unequivocally have a common interest.**

Plaintiff's argument that the allegations in her Complaint and Dr. Mayde Henson's Amended Complaint (collectively "the Pleadings") do not create an inference of a common interest between Ms. Goren and Dr. Henson is disingenuous. Ironically, Plaintiff accuses Defendants of "recast[ing]" the Pleadings. Opp'n 25. This simply is not the case.

Dr. Wright's Complaint does in fact create an inference of a common interest between Dr. Henson and Ms. Goren:

> she breached the contract and acted without integrity by telling the **then President and CEO of the Washington Regional Association of Grantmaker's (WRAG), Dr. Madye Henson** . . .
>
> This lawsuit, filed in the District of Columbia Superior Court, on June 30, 2020, bearing case number 2020 CA 002934 B, **is against WRAG, Defendant Goren (Defendant Goren is WRAG's Board Chair)** and others alleging discrimination and retaliation. In the complaint, Dr. Henson, who had no prior relationship with Dr. Wright, made clear that during a one on one meeting with Defendant Goren, the topic of Dr. Wright's departure came up.

Compl. 3-4 (emphasis added).

> The month following the parties' execution of the Severance Agreement, in or
>
> around early November 2019, Defendant **Goren met with Dr. Madye Henson, former President and CEO of Washington Regional Association of Grantmakers ("WRAG") in her capacity as WRAG's Chair of the Board of Directors.**

Compl. ¶ 35.

Dr. Henson's Amended Complaint cements the common interest, establishing the qualified common interest privilege.

> The leading voice of WRAG is Defendant Nicola O. Goren, the Caucasian chairwoman of the Board of Directors. She is also the President and CEO of the

7

> Eugene and Agnes E. Meyer Foundation, which claims to be a charitable giving organization and one of the largest contributors to the Association.

Henson Amend. Compl. 3, ECF No. 7-3.

> Next, **when Dr. Henson discussed Defendant Goren's firing of Dr. Wright from the Meyer Foundation and told her that it had sent shock waves through the industry and raised issues of discriminatory conduct**, Defendant Goren simply said that Dr. Wright was harmful to the Meyer Foundation because she created a "negative climate" and therefore she had to go. Dr. Henson saw this statement and action by Defendant Goren as being the stereotypical justification for people who discriminate in employment decisions based on race: nothing specific, articulable or objective.

Henson Amend. Compl. 5 (emphasis added). Plaintiff, who was not present for the alleged meeting, cannot undermine the purported expressed shared concern Dr. Henson and Ms. Goren had for how Ms. Goren, the voice of WRAG, was perceived in the philanthropic industry and the possible negative impact that perception could have on WRAG.

Moreover, Plaintiff's argument regarding the qualified privilege assumes a fact that has not been established in this case or any related case. It is merely an allegation. Plaintiff argues, "Defendant Goren made her statements in bad faith as she tried to cover up her own racial animus in firing Dr. Wright and therefore are (sic) not protected by privilege." Opp'n 25. Plaintiff has not alleged facts from which the Court could infer racial animus motivated any adverse decisions that Ms. Goren may have made with respect to Dr. Wright. Even if Plaintiff had evidence of racial animus, Dr. Wright erroneously conflates Ms. Goren's perceived state of mind when she terminated Dr. Wright with Ms. Goren's purported motives during her alleged conversation with Dr. Henson in an effort to establish malice.

In *Mattiaccio v. DHA Grp., Inc.*, the court found that the plaintiff failed to satisfy his burden of proof for showing the presence of malice when the defendants allegedly uttered defamatory statements. 87 F. Supp. 3d 169, 185-87 (D.D.C. 2015). Specifically, the court found at most that the plaintiff's evidence showed his employer had general ill will towards him, but not that the

defendants' primary motivation in publishing the report was malicious. *Id*. The court went on to say the plaintiff's evidence went to the motive for <u>investigating</u> Plaintiff's background, not to the motivation for <u>publishing</u> the Preliminary Investigation report or termination letter. *Id*. As *Mattiaccio* demonstrates, Dr. Wright cannot use Ms. Goren's alleged motives at the time of the termination to bootstrap Ms. Goren's mindset during her meetings with Dr. Henson.

      **2.**    **Plaintiff's Opposition demonstrates that she cannot carry her burden of disproving Ms. Goren's clearly subjective opinion.**

Even if true, Plaintiff's contention that she never personally received feedback from Ms. Goren or her staff that she was toxic, fostered a negative climate, and two-thirds of her staff would quit if she remained in her position is not sufficient to create an inference that Ms. Goren's statements to Dr. Henson were false. Opp'n 19. Plaintiff provides no authority for the proposition that simply because Dr. Wright did not direct feedback means Ms. Goren could not have subjectively believed these alleged statements to be true. Plaintiff can neither prove nor disprove the veracity of these statements because they are Ms. Goren's opinions. Likewise, it would be impossible for Plaintiff to prove *ex post facto* that Ms. Goren's alleged prediction that two-thirds of the staff would have quit had she not terminated Plaintiff was untrue.

      **3.**    **The Opposition does not overcome Plaintiff's failure to plead defamation *per se* or demonstrate special harm.**

Next, Plaintiff maintains she has a viable defamation claim even though she does not allege that Ms. Goren published the alleged defamatory statements to anyone other than Dr. Henson, or Dr. Henson believed the statements, and Plaintiff only generally alleges the statements caused her harm. In support of her argument, Dr. Wright cites to *Nyambal v. Alliedbarton Security Services, Inc.*, 344 F. Supp. 3d 183, 192 (D.D.C. 2018). In fact, *Nyambal* involves statements that were widely published in a political newspaper, which is significantly different from what Plaintiff alleges occurred here. To survive the Motion, this Court would need to find that Plaintiff properly

9

pled a case of defamatory *per se* or demonstrated special harm.  Plaintiff's sole reliance on *Nyambal* in light of clear case law on this issue is not a coincidence.

"A statement is defamatory as a matter of law ("defamatory *per se*") if it is so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation." *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012) (citing *Carey v. Piphus*, 435 U.S. 247, 262 (1978)).  In the absence of a published statement that is defamatory *per se*, a plaintiff must allege actual or pecuniary harm.  *Smith v. Clinton*, 253 F. Supp. 3d 222, 242 (D.D.C. 2017), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018).

In the case of *Smith v. Clinton*, the court found the complaint failed to make a showing of defamation *per se* or special harm and granted the defendant's motion to dismiss.  253 F. Supp. 3d at 242.  With regards to defamation *per se*, the *Smith* court stated:

> [I]njury to reputation . . . but the alleged instances of defamation in this case do not satisfy the legal test for statements that are inherently actionable as a matter of law. Plaintiffs maintain in response to the motion to dismiss that the statements are actionable *per se* because they clearly adversely affect plaintiffs' ability to be employed. But that is not clear at all, and plaintiffs' bald assertion is not sufficient to liken Secretary Clinton's statements to the sorts of utterances that courts consider to be defamatory *per se*. There are no facts alleged that would support an inference that the statements by Secretary Clinton, even if they had implied or suggested that the plaintiffs had not been truthful about this one very specific, highly personal matter, would have any impact on the plaintiffs' ability to secure or maintain employment.

*Smith*, 253 F. Supp. 3d 222, 242 (internal citations and quotations omitted).

*Smith* makes clear that the conclusory statements of harm in Ms. Wright's Complaint are inadequate.  *See* Opp'n 25.  ("As a result of these defamatory statements, Plaintiff has and will continue to suffer financial loss and reputational harm into the foreseeable future).  Instead of producing legal support to cure the deficiencies in the Complaint, the Opposition seems to suggest that because Dr. Wright alleged the statements relate to her occupation that alone is sufficient to avoid dismissal.  As *Smith* illustrates, it is not.  *See* 253 F. Supp. 3d at 242.

The *Smith* court held the following in concluding the plaintiff had not sufficiently pled special harm or defamation *per se*.

> In the absence of a published statement that is defamatory *per se*, plaintiffs were bound to allege actual or pecuniary harm. **Again, in opposition to the motion, plaintiffs point to a purely conclusory allegation.** Pls.' Opp. to Clinton MTD at 13 ("As a direct and proximate result of [Secretary] Clinton's statements, [p]laintiffs have suffered pecuniary damage . . . ."), quoting Compl. ¶ 37. **But plaintiffs must offer more than labels and conclusions to state a claim**, *see Iqbal*, 556 U.S. at 668, 129 S.Ct. 1937, quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and this is insufficient. *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013) (holding that the plaintiff in a defamation case "**must allege some specific harm and the actual pecuniary loss arising from that harm**"), citing *Franklin*, 875 F.Supp.2d at 75 (granting a motion to dismiss a defamation claim where a plaintiff alleged harm stemming from the "risk [of] having her credit suffer," because the plaintiff did "not say that this harm has actually occurred, or that she has sustained any pecuniary loss as a result.").

*Smith*, 253 F. Supp. 3d at 242-43(emphasis added).  Like the plaintiff in *Smith*, Dr. Wright's conclusory claims of reputational and economical harm are inadequate to withstand dismissal. *See* Opp'n 25.

### C. Plaintiff's Argument That Ms. Goren was a Party to the Severance Agreement is Frivolous.

As set forth above, the Court can summarily reject Plaintiff's argument that the Mutual Non-Disparagement Clause imposed a different obligation on the Foundation than is plainly stated in its terms under well-settled contract law. *See supra* at 5.  For that reason, Plaintiff's attempt to rewrite the Severance Agreement to convince this Court that Dr. Wright and both the Foundation and Ms. Goren were the intended contractual parties fails.  Other than signing the document as CEO of the Foundation, because as Plaintiff correctly recognizes, the Foundation is inanimate, Plaintiff does not point to any provision in the agreement that makes Ms. Goren a party to the agreement.  *See* Opp'n 29.

Instead, Plaintiff tries to discredit Defendants' argument on this issue by arguing *Jones v. Quintana*, 872 F. Supp. 2d 279 (D.D.C. 2012), is inapposite.  Not only is *Jones* instructive, but

countless cases would hold the unambiguous words of the agreement are fatal to Dr. Wright's position that Ms. Goren was a contractual party. These cases include *Guttenberg v. Emery*, 41 F. Supp. 3d 61 (D.D.C. 2014) and *Charlton v. Mond*, 987 A.2d 436 (D.C. 2010) which Defendants cited in their Motion and Plaintiff selectively does not challenge. ; *See also Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 183 (D.D.C. 2006)(finding Plaintiff did not have a breach of contact claim against non-contractual party defendant and stating "[t]he mere fact that Papst Licensing has what Minebea wants does not give Minebea a claim against Papst.") *dismissed*, 224 F. App'x 962 (Fed. Cir. 2007); *Parks v. Fed. Home Loan Bank of San Francisco*, No. CV 19-883 (JEB), 2020 WL 417795, at *4 (D.D.C. Jan. 27, 2020)(rejecting the plaintiff's argument that the general counsel had accepted the contract proposal binding the directors to the contract where the complaint alleged no facts to support that conclusion).

As *Unfoldment, Inc. v. District of Columbia Contract Appeals Bd.* Instructs, this Court should reject Plaintiff's meritless attempt to rewrite the unambiguous Severance Agreement. 909 A.2d 204, 209 (D.C. 2006) ("A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity)." Ms. Goren is a non-party and cannot be liable for allegedly breaching its terms.

### III.  CONCLUSION

For the reasons set forth above, and stated in the Memorandum in Support of the Motion to Dismiss the Complaint, Defendants Eugene & Agnes E. Meyer Foundation and Nicola Goren respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: October 6, 2020                                         Respectfully submitted,

                                                                               */s/ Patricia Donkor*
                                                                             Alison N. Davis (Bar No. 429700)

          Patricia Donkor (Bar No. 100455)
          LITTLER MENDELSON, P.C.
          815 Connecticut Avenue, NW, Suite 400
          Washington, DC 20006-4006
          202-842-3400 Telephone
          202-842.0011 Facsimile
          ANDavis@littler.com
          PDonkor@littler.com

## CERTIFICATE OF SERVICE

I certify that on this 6th day of October 2020, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF system, which caused a copy of the same to be served upon:

> Derek S. Sells
> Tracey L. Brown
> 55 Broadway, 23rd Floor
> New York, NY 10006
> Dsells@cochranfirm .com
> tbrown@cochranfirm.com
> *Counsel for Plaintiff*

  */s/ Patricia B. Donkor*
Patricia B. Donkor