

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION – CIVIL ACTIONS BRANCH**
**500 INDIANA AVENUE NW, Room 5000**
**WASHINGTON, DC 20001**

12-11-2020

The Honorable Angela Caesar, Clerk
United States District Court for the District of Columbia
3rd and Constitution Avenue, Washington, D.C. 20001

**In Re:    WRIGHT, TERRI D.   Vs.  EUGENE & AGNES E. MEYER FOUNDATION et al**

**Civil Action Number: 2020 CA 003266 B  U.S. District Number: 1:20-cv-02471**

Dear Ms. Angela Caesar:

Transmitted herewith are all of the pleadings filed in the above captioned case pursuant to a Petition for Removal Filed on September 3, 2020.  A certified copy of the docket entries is also enclosed.

Please acknowledge receipt of our file on the duplicate copy of this letter, and return it to this Court.

Sincerely,

Joy Jefferson, Branch Chief
 Civil Actions Branch

By: /s/ *Katharine Cournoyer*

Case 1:20-cv-02471-KBJ   Document 10   Filed 05/11/21   Page 2 of 62

---

| Case Number | Status | | Judge |
|---|---|---|---|
| 2020 CA 003266 B | Closed | | RIGSBY, ROBERT R |

---

| In The Matter Of | | Action |
|---|---|---|
| WRIGHT, TERRI D.   Vs. EUGENE & AGNES E. MEYER FOUNDATION et al | | Complaint for Breach of Contract Filed |

---

| Party | | Attorneys |
|---|---|---|
| WRIGHT, TERRI D.<br>204 BEACON PLACE NE<br>WASHINGTON, DC 20011 | PLNTF | SELLS, Mr DEREK S<br>COCHRAN FIRM<br>233 BROADWAY<br>5TH FLOOR<br>New York, NY 10279 |
| EUGENE & AGNES E. MEYER FOUNDATION<br>1250 CONNECTICUT AVENUE NW<br>SUITE 800<br>WASHINGTON, DC 20036 | DFNDT | |
| GOREN, NICOLA O.<br>4228 Alton PL NW<br>WASHINGTON DC, DC 20016 | DFNDT | |

---

| Opened | Disposed | Case Type |
|---|---|---|
| 07/23/2020 | Removal-Notice of<br>Removal To USDC | Civil II |

Comments:

---

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr     Ref Nbr | Amount Owed/<br>Amount | Dismissed | Balance Due |
|---|---|---|---|---|---|
| 1 | 📷 12/11/20 | Notice of Hearing Mailed Next Business Day<br><br>Notice Of Removal<br>Sent on:  12/11/2020  12:44:45.78 | | 0.00 | 0.00 |
| 2 | 09/04/20 | Notice of Removal to USDC for the District of Columbia. 1:20-cv-02471. | | 0.00 | 0.00 |
| 3 | 09/04/20 | Event Resulted:<br>The following event: Initial Scheduling Conference-60 scheduled for 10/23/2020 at 10:00 am has been resulted as follows:<br><br>Result: Event Not Held Case Dismissed<br>Judge: RIGSBY, ROBERT R    Location: Courtroom 201 | | 0.00 | 0.00 |
| 4 | 📷 09/03/20 | Additional eFiling Document to Notice of Filing Notice of Removal. Submitted 09/03/2020 17:53. kd<br>Attorney: DAVIS, Ms ALISON N (429700)<br>EUGENE & AGNES E. MEYER FOUNDATION (Defendant); NICOLA O. GOREN (Defendant); | | 0.00 | 0.00 |

2020 CA 003266 B    WRIGHT, TERRI D.  Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr    Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|-----|---------|------------------------------------------------------------------|----------------------------------|-------------|
| 5 | 09/03/20 | Notice of Filing Notice of Removal<br>Filed. Submitted 09/03/2020 17:53. kd<br>Attorney: DAVIS, Ms ALISON N (429700)<br>EUGENE & AGNES E. MEYER FOUNDATION<br>(Defendant); NICOLA O. GOREN<br>(Defendant); | 0.00 | 0.00 |
| 6 | 08/22/20 | Proof of Service<br>   Method  : Service Issued<br>   Issued  : 07/24/2020<br>   Service : Summons Issued<br>   Served  : 08/13/2020<br>   Return  : 08/22/2020<br>   On      : GOREN, NICOLA O.<br>   Signed By : Andrew Cohen<br><br>   Reason  : Proof of Service<br>   Comment :<br><br>   Tracking #: 5000228409 | 0.00 | 0.00 |
| 7 | 08/22/20 | Affidavit of Service of Summons &<br>Complaint on<br>NICOLA O. GOREN (Defendant); | 0.00 | 0.00 |
| 8 | 07/24/20 | Information Sheet Filed. Submitted<br>07/24/2020 16:59. kd<br>Attorney: SELLS, Mr DEREK S (420398)<br>Mr DEREK S SELLS (Attorney) on behalf<br>of TERRI D. WRIGHT (Plaintiff) | 0.00 | 0.00 |
| 9 | 07/24/20 | Summons Issued and eServed by the Clerk | 0.00 | 0.00 |
| 10 | 07/24/20 | Summons Issued and eServed by the Clerk | 0.00 | 0.00 |
| 11 | 07/24/20 | Issue Date:  07/24/2020<br>Service:  Summons Issued<br>Method:  Service Issued<br>Cost Per:  $<br><br><br>EUGENE & AGNES E. MEYER FOUNDATION<br>1250 CONNECTICUT AVENUE NW<br>SUITE 800<br>WASHINGTON, DC  20036<br>Tracking No: 5000228408<br><br><br>GOREN, NICOLA O.<br>4228 Alton PL NW<br>WASHINGTON DC, DC  20016<br>Tracking No: 5000228409 | 0.00 | 0.00 |

2020 CA 003266 B    WRIGHT, TERRI D.  Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

| No. | Date of | Pleadings Filed, Orders and Decrees | Amount Owed/ | Balance Due |
|-----|---------|-------------------------------------|--------------|-------------|
|     |         | Journal Book-Page-Nbr      Ref Nbr  | Amount Dismissed | |

| 12 | 07/24/20 | Initial Summons Requested as to:<br>Submitted 07/24/2020 13:06. chd<br>Attorney: SELLS, Mr DEREK S (420398)<br>EUGENE & AGNES E. MEYER FOUNDATION<br>(Defendant); | 0.00 | 0.00 |
| 13 | 07/24/20 | Initial Summons Requested as to:<br>Submitted 07/24/2020 13:05. chd<br>Attorney: SELLS, Mr DEREK S (420398)<br>NICOLA O. GOREN (Defendant); | 0.00 | 0.00 |
| 14 | 07/24/20 | Complaint Package eServed to Filer | 0.00 | 0.00 |
| 15 | 07/24/20 | Initial Order and Addendum Issued (60<br>Days)<br><br>Initial Order-60 Days<br>Sent on:  07/24/2020  09:02:38.93 | 0.00 | 0.00 |
| 16 | 07/24/20 | Event Scheduled<br>Event: Initial Scheduling<br>Conference-60<br>Date: 10/23/2020    Time: 10:00 am<br>Judge: RIGSBY, ROBERT R    Location:<br>Courtroom 201 | 0.00 | 0.00 |
| 17 | 07/23/20 | eComplaint Filed. Submitted 07/23/2020<br>21:47. chd<br>(NO SUMMONS OR INFORMATION SHEET)<br>Attorney: SELLS, Mr DEREK S (420398)<br>TERRI D. WRIGHT (Plaintiff); | 0.00 | 0.00 |
| 18 | 07/23/20 | Complaint for Breach of Contract Filed<br>    Receipt: 458388  Date: 07/24/2020 | 120.00 | 0.00 |

|  | Totals By:  Cost |  | 120.00 | 0.00 |
|  |      Information |  | 0.00 | 0.00 |

*** End of Report ***



A TRUE COPY
DATE:
Clerk, Superior Court of
the District of Columbia

Filed
D.C. Superior Court
09/03/2020 17:53PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **TERRI D. WRIGHT** | |
| **Plaintiff,** | **Case No.  2020 CA 003266 B** |
| **v.** | |
| **EUGENE & AGNES E. MEYER FOUNDATION**, *et al*., | |
| **Defendants.** | |

### <u>NOTICE OF FILING NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that, on this date, Defendants Eugene & Agnes E. Meyer Foundation and Nicola O. Goren filed with the United States District Court of the District of Columbia their Notice of Removal, a copy of which is attached to this Notice of Filing.

Dated:  September 3, 2020

/s/ Alison N. Davis

Alison N. Davis (Bar No. 429700)
Patricia Donkor (Bar No. 1000455)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC  20006-4046
202.842.3400  Telephone
202.842.0011  Facsimile
ANDavis@littler.com
PDonkor@littler.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 3, 2020, a copy of the foregoing Notice of Filing Notice

of Removal was served by first class mail, postage prepaid, upon the following:

> Derek Sells
> The Cochran Firm
> 55 Broadway, 23rd Floor
> New York, NY 10006
>
> *Counsel for Plaintiff*

 /s/ Alison N. Davis
Alison N. Davis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRI D. WRIGHT,**<br>204 Beacon Place, NE<br>Washington, DC 20011, | |
| **Plaintiff,** | **Case No. 20-cv-2471** |
| **v.** | |
| **EUGENE & AGNES E. MEYER<br>FOUNDATION,**<br>1250 Connecticut Ave, NW, Suite 800<br>Washington, DC 20036 | |
| and | |
| **NICOLA O. GOREN,**<br>4228 Alton Pl, NW<br>Washington, DC 20016 | |
| **Defendants.** | |

## <u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

PLEASE TAKE NOTICE, that pursuant to 28 U.S.C. §§ 1331 and 1446, Defendants

Eugene & Agnes E. Meyer Foundation and Nicola O. Goren ("Defendants") file this Notice of

Removal of the above-captioned matter from the Superior Court for the District of Columbia to

the United States District Court for the District of Columbia. The grounds for removal are as

follows:

1.      On August 13, 2020, Plaintiff Terri D Wright ("Plaintiff") served Defendant Nicola

O. Goren with the Summons and Complaint, a true and correct copy of which is attached hereto.

On that same date, counsel for Defendants accepted service for Defendant Eugene & Agnes E.

Meyer Foundation The action was brought in the Superior Court for the District of Columbia,

styled and captioned exactly as above, and assigned Case No. 2020 CA 003266 B. Plaintiff brings

a claim arising under federal law for race discrimination pursuant to 42 U.S.C. § 1981 in addition to common law claims of defamation; and breach of contract. No other pleading was served on Defendants in the State Court action.

2.     This Court has jurisdiction over the matter because one or more of Plaintiff's claims arises under the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Specifically, Count I of Plaintiff's Complaint asserts a claim under 42 U.S.C. § 1981. This Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. §§ 1367(a) and 1441(c).

3.     In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after Defendants were served with a copy of the initial pleading.

4.     The Superior Court in which Plaintiff commenced this matter is within this Court's district. Therefore, the matter is properly removable to this Court. 28 U.S.C. § 1441(a).

5.     A copy of this Notice of Removal is being filed with the Clerk of the Superior Court for the District of Columbia, and a copy is being served on Plaintiff as required by 28 U.S.C. § 1446(d). A copy of the Notice of Filing of Notice of Removal is filed herewith.

6.     Filed herewith is a copy of the Notice to Plaintiff of Filing of Notice of Removal, the original of which is being served on Plaintiff in accordance with 28 U.S.C. § 1446(a).

7.     The required filing fee of $400.00 and an executed civil cover sheet accompany this Notice.

WHEREFORE, having fulfilled all statutory requirements, Defendants hereby remove this action from the Superior Court for the District of Columbia, to this Court, and requests that this Court assume full jurisdiction over this matter as provided by law.

September 3, 2020

/s/ Alison N. Davis
Alison N. Davis (Bar No. 429700)
Patricia Donkor (Bar No. 1000455)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC  20006-4046
202.842.3400  Telephone
202.842.0011  Facsimile
ANDavis@littler.com
PDonkor@littler.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of September 2020, a true and correct copy of Notice

of Removal was served by first class mail, postage prepaid, upon the following:

> Derek Sells
> The Cochran Firm
> 55 Broadway, 23rd Floor
> New York, NY 10006
>
> *Counsel for Plaintiff*

I further certify that, pursuant to 28 U.S.C. § 1446(d), on September 3, 2020, a copy of the

foregoing Notice of Removal was served via Case FileXpress upon the following:

> James D. McGinley
> Clerk of the Court
> Superior Court of the District of Columbia
> 500 Indiana Avenue, N.W.
> Washington, DC  20001

> */s/ Alison N. Davis*
> Alison N. Davis

4.

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 11, 2020**

CASE NAME:  TERRI D. WRIGHT Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

CASE NUMBER:  2020 CA 003266 B

## NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

Mr DEREK S SELLS
COCHRAN FIRM
233 BROADWAY
New York, NY 10279

2020 CA 003266 B

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 11, 2020**

CASE NAME:  TERRI D. WRIGHT Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

CASE NUMBER:  2020 CA 003266 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

TERRI D. WRIGHT
204 BEACON PLACE NE
WASHINGTON, DC 20011

2020 CA 003266 B

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 11, 2020**

CASE NAME:  TERRI D. WRIGHT Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

CASE NUMBER:  2020 CA 003266 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

EUGENE & AGNES E. MEYER FOUNDATION
1250 CONNECTICUT AVENUE NW
SUITE 800
WASHINGTON, DC 20036

2020 CA 003266 B

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 11, 2020**

CASE NAME:  TERRI D. WRIGHT Vs. EUGENE & AGNES E. MEYER FOUNDATION et al

CASE NUMBER:  2020 CA 003266 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

| First Class Mail |
| U. S. Postage |
| Paid |
| Washington, D.C. |
| Permit No. 1726 |

NICOLA O. GOREN
4228 Alton PL NW
WASHINGTON DC, DC 20016

2020 CA 003266 B

CANOR

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA - CIVIL DIVISION**

Terri D. Wright

Plaintiff

Case No.: 2020 CA 003266 E

*vs.*

Eugene & Agnes E. Meyer Foundation, et al.

Defendant(s)

## AFFIDAVIT OF SERVICE

I, Vance M. Warren, Sr., a Private Process Server, being duly sworn, depose and say:

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That I have been duly authorized to make service of the Initial Order and Addendum, Summons, and Verified Complaint in the above entitled case.

That on 08/13/2020 at 3:04 PM, I served Nicola O. Goren with the Initial Order and Addendum, Summons, and Verified Complaint at 4228 Alton Place, NW, Washington, DC 20016, by serving Andrew Cohen, husband of Nicola O. Goren, a person of suitable age and discretion, who stated that he/she resides therein with Nicola O. Goren.

Andrew Cohen is described herein as:

Gender: Male   Race/Skin: White   Age: 56   Weight: 170   Height: 6'0"   Hair: Blonde   Glasses: Yes

I declare under penalty of perjury that this information is true and correct.

Sworn to before me on 08/17/2020

Angela H. Croson
Notary Public, District of Columbia
My Commission Expires: March 31, 2024

Vance M. Warren, Sr.

Client Ref Number:N/A
Job #: 1580369

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

Filed
D.C. Superior Court
07/24/2020 16:08PM
Clerk of the Court

**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Terri D. Wright
_____
                              Plaintiff

vs.

                                                    Case Number   2020 CA 003266 B

Nicola O. Goren
_____
                              Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Derek S. Sells
_____
Name of Plaintiff's Attorney

The Cochran Firm                               By _____

Address
55 Broadway, 23rd Fl., NY, NY, 10006

212-553-9120                                   Date _____07/24/2020_____

Telephone

Clerk of the Court

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오         የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Filed
D.C. Superior Court
07/24/2020 16:59PM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

| | |
|---|---|
| Terri D. Wright | Case Number: 2020 CA 003266 B |
| vs | Date: July 24, 2020 |
| Eugene & Agnes E Meyer Foundation et al. | ☐ One of the defendants is being sued in their official capacity. |

| Name: *(Please Print)* Derek S. Sells | Relationship to Lawsuit |
|---|---|
| Firm Name: The Cochran Firm | ☒ Attorney for Plaintiff |
| Telephone No.: 212-553-9120    Six digit Unified Bar No.: 420398 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury     ☐ 6 Person Jury     ☐ 12 Person Jury

Demand: $_____     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                 Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☒ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees            Under $25,000 Pltf. Grants Consent         Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                       Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile                  ☐ 03 Destruction of Private Property      ☐ 05 Trespass
☐ 02 Conversion                  ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy                 ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                        Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference              ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution              ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal                  ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death)   ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,       ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                             Not Malpractice)                  ☐ 23 Tobacco
                                                                         ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

July 24, 2020

_____
Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Filed
D.C. Superior Court
07/24/2020 15:05PM
Clerk of the Court

Terri D. Wright
_____
Plaintiff

vs.

EUGENE & AGNES E. MEYER FOUNDATION
_____
Defendant

Case Number  **2020 CA 003266 B**

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Derek S. Sells
_____
Name of Plaintiff's Attorney

The Cochran Firm
_____
Address
55 Broadway, 23rd Fl., NY, NY, 10006
_____
212-553-9120
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date _____07/24/2020_____

如需翻译, 请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Filed
D.C. Superior Court
07/24/2020 18:08PM
Clerk of the Court

Terri D. Wright
_____
                              Plaintiff

vs.

Nicola O. Goren
_____
                              Defendant

Case Number   **2020 CA 003266 B**

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Derek S. Sells
_____
Name of Plaintiff's Attorney

The Cochran Firm
_____
Address
55 Broadway, 23rd Fl., NY, NY, 10006
_____
212-553-9120
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

Date _____
                              07/24/2020

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                  Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Filed
D.C. Superior Court
07/24/2020 13:06PM
Clerk of the Court

Terri D. Wright
_____
Plaintiff

vs.

Case Number **2020 CA 003266 B**

EUGENE & AGNES E. MEYER FOUNDATION
_____
Defendant

**SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Derek S. Sells
_____
Name of Plaintiff's Attorney

The Cochran Firm
_____
Address
55 Broadway, 23rd Fl., NY, NY, 10006
_____

212-553-9120
_____
Telephone

*Clerk of the Court*

By _____
             Deputy Clerk

Date _____

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Filed
**D.C. Superior Court
07/24/2020 13:05PM
Clerk of the Court**

Terri D. Wright
_____
Plaintiff

vs.

Case Number **2020 CA 003266 B**

Nicola O. Goren
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Derek S. Sells
_____
Name of Plaintiff's Attorney

The Cochran Firm
_____
Address
55 Broadway, 23rd Fl., NY, NY, 10006
_____

212-553-9120
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____

如需翻译, 请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
07/22/2020 21:00PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

----------------------------------------------------------X

TERRI D. WRIGHT
204 Beacon Place NE
Washington, DC 20011

       **2020 CA 003266 B**

Plaintiff,

          -against-             **VERIFIED COMPLAINT**

EUGENE & AGNES E. MEYER FOUNDATION,    **Jury Trial Demanded**
1250 Connecticut Avenue NW
Suite 800
Washington, DC 20036

and NICOLA O. GOREN,
4228 Alton Pl NW
Washington, DC 20016

Defendants.

----------------------------------------------------------X

Plaintiff TERRI D. WRIGHT, by and through her counsel, THE COCHRAN FIRM, as and for her Verified Complaint against Defendants, respectfully sets forth and alleges:

**PRELIMINARY STATEMENT**

The Eugene and Agnes E. Meyer Foundation (hereinafter "the Meyer Foundation") was established in 1944 by Eugene Meyer, founder of the Washington Post, and his wife, Agnes E. Meyer, a tireless Civil Rights advocate. Since its inception, the Meyer Foundation had been a well-regarded philanthropic organization providing grants aimed at advancing charitable and educational initiatives within the District of Columbia metropolitan region, which encompasses the District of Columbia, Maryland and Northern Virginia.

In recent years, the Meyer Foundation has increased its focus on supporting grants aimed at addressing issues of racial inequity within the community it serves. In fact, while Dr. Terri Wright, Plaintiff, served as the Vice President of Program and Community, the Meyer

1

Foundation gave nearly $3.6 million in grants to organizations committed to advancing racial equity causes within the District of Columbia metropolitan area.   This significant accomplishment for the Meyer Foundation was possible through the work and contributions of Dr. Wright.

Despite the Meyer Foundation's external pledge to aid outside organizations with financial support dedicated to addressing issues of racial inequity, it has, under the direction of its current President and Chief Executive Officer, Defendant Nicola Goren, wholly failed in implementing racial equity within the Meyer Foundation itself.  This failure by Defendant Goren to address these issues evidenced her racial animus against Plaintiff.   It also presaged the termination of Plaintiff's employment, the subsequent breach of her contract, the violation of her Civil Rights and the making of false and defamatory statements about her.

Prior to Dr. Wright joining the Meyer Foundation, Defendant Goren had her staff engage in discussions surrounding racial equity within their work environment during the Summer of 2017.   During these discussions, several employees of color shared their own concerns and experiences regarding race issues within the Meyer Foundation after being encouraged to do so. However, many later felt that their concerns went disregarded and were done only as a ploy to make it appear as if the Meyer Foundation cared about issues of race inside the company.  These staff members felt the Summer of 2017 was merely an all "talk" endeavor orchestrated by Defendant Goren.   This sentiment was further reflected in the internal surveys staff were requested to complete in 2018.

Despite this culture, the Plaintiff was extremely productive in her work at the Meyer Foundation. She garnered Board support for many of her proposals and projects, fostered close relationships with her direct reports and introduced an efficient transition plan to assist the Meyer

Foundation in its rebranding campaign.  Dr. Wright's significant contributions to the Meyer Foundation were meaningless to Defendant Goren who made the decision to fire the Plaintiff without cause or justification.  As part of the termination process, Defendant Goren and the Meyer Foundation entered into a contract that set forth certain conditions to which each party was to be bound.  One of the provisions was that neither Defendant Goren nor the Plaintiff would disparage each other or the Meyer Foundation.  Ironically, despite Defendant Goren's profile on the Meyer Foundation's website which states, "I am rooted in integrity," she breached the contract and acted without integrity by telling the then President and CEO of the Washington Regional Association of Grantmaker's (WRAG), Dr. Madye Henson, that Dr. Wright was "toxic," created "a negative climate" at the Foundation and had to be fired.

This violation of the non-disparagement clause of the Contract was done with racial animus in violation of 42 U.S.C. 1981 which prohibits discrimination in the making and enforcement of contracts.  The discriminatory animus is clear since Defendant Goren has not disparaged any non-African American employee who has left the company, let alone any non-African American who left the company with a contract that specifically contained a mutual non-disparagement clause.  For example, in contrast to the defamation Defendant Goren heaped on Dr. Wright, Defendant Goren did not defame Dr. Wright's predecessor, a Caucasian man, who also separated from the company.

The way that Dr. Wright learned of this disparaging and defamatory commentary about her was by reading the allegations of a Civil Rights complaint that Dr. Henson, filed against Defendant Goren accusing Goren of orchestrating an illegal termination of Dr. Henson based on her race as an African American. This lawsuit, filed in the District of Columbia Superior Court, on June 30, 2020, bearing case number 2020 CA 002934 B, is against WRAG, Defendant Goren

3

(Defendant Goren is WRAG's Board Chair) and others alleging discrimination and retaliation. In the complaint, Dr. Henson, who had no prior relationship with Dr. Wright, made clear that during a one on one meeting with Defendant Goren, the topic of Dr. Wright's departure came up and in response Defendant Goren made disparaging comments that were in blatant violation of Dr. Wright's contract.

This lawsuit is brought to redress the harm done to Dr. Wright as a result of Defendant Goren and the Meyer Foundations' breach of contract, violation of civil rights and defamation.

## NATURE OF THE CLAIMS

1.     This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' conduct taken against the Plaintiff, including Defendants' defamation, violations of 42 U.S.C. §1981 and breach of contract.

2.     Defendants' conduct was knowing, malicious, willful, wanton and/or showed a reckless disregard for Plaintiff.  As a result, the Plaintiff has suffered and continues to suffer economic and non-economic damages, permanent harm to her professional and personal reputations as well as severe emotional distress.

## JURISDICTION & VENUE

3.      This Court has jurisdiction over this matter because the contract at issue lists the District of Columbia as having Jurisdiction.

4.     Venue of this action is based upon the contract at issue that lists the District of Columbia as being the proper place for Venue.

5.     Jurisdiction and venue in the contract at issue sets forth that: "[t]his revised letter agreement shall be interpreted and construed by the laws of the District of Columbia, without regard to conflict of laws provision.  You hereby irrevocably submit to and acknowledge and

recognize the jurisdiction of the courts of the District of Columbia, or if appropriate, a federal court located in the District of Columbia (which courts, for purposes of this revised letter agreement, are the only courts of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this revised letter agreement or the subject matter hereof."

## PARTIES

6.     Plaintiff, Dr. Terri Wright, is and was at the time of the occurrence a resident of the District of Columbia.

7.      Defendant Eugene & Agnes E. Meyer Foundation (hereinafter "Defendant Meyer Foundation") is a private charitable organization with its principal place of business at 1250 Connecticut Avenue, NW, Suite 800, Washington, DC 20003. At all relevant times, Defendant Meyer Foundation  entered into the Agreement at issue with the Plaintiff and participated directly in the defamation, breach of contract and violations of 42 U.S.C. § 1981.  Moreover, at all relevant times, Defendant Meyer Foundation employed Defendant Nicola Goren.

8.     At all relevant times, Defendant Nicola Goren ("Defendant Goren") was the President and Chief Executive Officer ("CEO"), and she participated directly in the defamation, breach of contract and violations of 42 U.S.C. § 1981.

## PROCEDURAL REQUIREMENTS

9.     All conditions and requirements precedent to the commencement of this action have been met.

## FACTUAL ALLEGATIONS

### Dr. Wright's Professional and Educational Background

10.     Dr. Wright has and continues to dedicate her professional career to advancing racial and social equity within historically challenged areas such as housing, education, economic well-being and public health.  In her pursuit of addressing these glaring inequities that plagued low-income and communities of color, Dr. Wright has held different leadership positions at various governmental, private and public institutions such as American Public Health Association ("APHA"), W.K. Kellogg Foundation, Michigan Department of Public Health and the Georgia Department of Health and Human Services.

11.     Examples of Dr. Wright's exemplary leadership and commitment are demonstrated by her accomplishments in each of the positions she has held.  For example, during Dr. Wright's tenure at APHA she spearheaded initiatives geared toward identifying the multiple forms of racism as social determinants compromising health and well-being in addition to retaining subject matter experts on the aforementioned to advance the Association's equity agenda.  And, prior to Dr. Wright's tenure at APHA, her work at the W.K. Kellogg Foundation included prioritizing the Foundation's internal diversity and inclusion efforts to help ensure its grantmaking was committed to initiatives focused on undoing racism and achieving equity. Moreover, while working at the Michigan Department of Public Health and Georgia Department and Health and Human Services/Public Health Division, Dr. Wright dedicated her role to ensuring women and children had quality access to healthcare despite their socioeconomic status or race.

12.     To this end, Dr. Wright was eager to pursue a new opportunity as Vice President for Program and Community at the Meyer Foundation which according to its stated mission and

history, advanced the causes that Dr. Wright loved regarding racial equity in housing, education, and economic well-being.

### Dr. Wright's Tenure at the Meyer Foundation

13.     As part of the Meyer Foundation's plan to better its grantmaking strategy, Defendant Goren hired Dr. Wright to lead the Foundation in a new strategic direction. Specifically, the Meyer Foundation was looking to change their grantees to whom it has traditionally provided funding, in favor of grantees committed to taking on a more active role of advocacy in pursuit of racial equity within the community.

14.     On account of Dr. Wright's stellar experience, she was selected to interview for the position of Vice President of Program and Community, which included undergoing five rounds of interviews with various Board Members, staff members, and Defendant Goren.  After successfully completing the interview process, Dr. Wright was hired in February 2018.

15.     When Dr. Wright came on board, she learned that she was hired to replace Rick Moyers, a Caucasian male, who previously held the title of Vice President of Program and Communications. However, in light of the Meyer Foundation's new direction, Mr. Moyers' previously held position was changed to reflect Dr. Wright's title at the time she was hired.

16.     Defendant Goren shared with Dr. Wright the circumstances behind Mr. Moyer's separation and the events leading up to her decision to terminate him. Nothing that Defendant Goren said about Mr. Moyers was disparaging, rather she made it appear as if his departure was just a disagreement over vision.  Defendant Goren was amiable regarding Mr. Moyer's termination allowing him  to leave the Meyer Foundation on his own terms that did not adversely affect his reputation within the philanthropic community.  In contrast, this was not the treatment that Dr. Wright received by Defendant Goren following her termination.

17.     In her role as Vice President of Program and Community, the Plaintiff was responsible for overseeing the Foundation's programs and community engagement efforts, which, included, but was not limited to the implementation and integration of the Foundation's key strategies of grant making, capacity building, collective action and advocacy across the region.  Dr. Wright oversaw all programming within the following territories: District of Columbia, Maryland and Northern Virginia.

18.     As soon as Dr. Wright came onboard, staff members confided in her the hardships that occurred under Defendant Goren's leadership which heightened during the Summer of 2017 and continued thereafter.  During this summer, many of the staff reported they went through "painful" and uncomfortable discussions relating to racial equity within the Meyer Foundation. These discussions were led by Defendant Goren.  But many of the participants felt that the concerns raised in the discussions fell on deaf ears as no meaningful change was implemented to address their shared complaints.  In fact, an African-American male staff member described these discussions as mere "talk" under the guise of making it appear as if the Meyer Foundation cared.

19.     Ultimately, in June 2018, Aisha Alexander-Young was hired to implement racial equity within the organization as the Senior Director of Strategy and Racial Equity.  One of Ms. Alexander-Young's first initiatives during her tenure was to launch a survey for the Meyer Foundation's employees.  The results, which came back some time in the Fall of 2018 showed that employees of color within the organization felt uncomfortable and believed that their race negatively impacted their work environment.  The feedback also documented a lack of trust in the leadership and management of the Foundation. In response, no meaningful action was taken to address these glaring issues.

20.     Moreover, in October 2018, one of the Meyer Foundation's African-American Program Assistants left the organization feeling as if she was being set up for failure on account of her race.  Upon Dr. Wright's hiring, Defendant Goren warned the Plaintiff that the employee may not be "well-suited" for the job and it was up to Dr. Wright to determine how she would manage the African-American Program Assistant.  When Dr. Wright met with this Program Assistant and assured her that she would work with her in keeping her job, the employee still did not feel comfortable and left the Meyer Foundation.  She complained to Dr. Wright that she felt she was being forced out because of her race and did not believe that Dr. Wright would have the authority to override the pervasive discrimination she was forced to endure.

21.     Although Dr. Wright addressed staff members' complaints about the hostile work environment to which they were subjected on account of their race, she did not create this toxic environment.  In fact, Dr. Wright excelled in her new role and worked with the staff to improve performance and to foster a racially equitable work environment.

22.     As part of her efforts to help the Meyer Foundation advance racial equity within the region, she developed a framework to facilitate the Foundation's transition of removing direct service grants and grantees from the Foundation's portfolio to allow for grantmaking aimed at combating systemic racism.  Dr. Wright's framework garnered Board support and the Board authorized funding to support her framework.  Moreover, in furthering the Foundations' vision, Dr. Wright established a mechanism to collect demographic data from prospective grantees to ensure the Meyer Foundation was working with minority owned and/or directed organizations.

23.     Moreover, during Dr. Wright's first year and a half at the Meyer Foundation, she spearheaded significant initiatives including the following:

- Formulating a strategy positioning the Meyer Foundation as taking the lead in developing a regional strategy amongst philanthropic organizations for the 2020 Census.

- Participating in and promoting the "Get Out the Vote" campaign both within the Foundation, and also throughout the region.

- Leading the philanthropic response to the 2018-2019 Federal Government shutdown by expediting grants to nonprofit organizations that provided direct services to assist those economically impacted by the Federal Government shutdown.

- Redesigning programmatic presentations for reviewing and approving prospective grantees by Board Members to increase efficiency focused on strategy and not tactics.

- Revamping the Program Associate Position to better meet the grant making needs of the program team and to optimize the current Program Associate's skillsets and experiences.

- Leading developmental work for new youth engagement focused on cultivating a new generation of community leaders and advocates.

24.     At the end of 2018, the Plaintiff received a favorable performance evaluation from Defendant Goren.  In addition, despite not having worked at the Meyer Foundation for an entire year, Defendant Goren gave Dr. Wright a raise in salary..

25.     Despite her accomplishments and accolades within her first year, Defendant Goren began to paper trail her in the feedback she provided during Dr. Wright's 2018 Year End Evaluation.  Defendant  Goren could not criticize Dr. Wright for her objective performance and instead praised her  for a "strong year," acknowledged that she "contributed to the advancement of [the Foundation's] mission, vision and goals," and stated that  "[a]s far as contributions and deliverables Terri hit the ground running as a VP and has been highly productive.  I appreciate having a partner who is on the same page in terms of the vision for our direction and our work, with a strong point of view in how to execute against that mission." She further lauded the Plaintiff for having "[d]eveloped and presented a cohesive request and plan for respectfully transitioning organizations that do not fit in the new strategy, which resulted in the Board

10

unanimously approving efforts to increase the grant target over two years and accommodate the transition." So instead of attacking Dr. Wright's objective deliverables for the Foundation, Defendant Goren raised subjective and false criticism aimed at interpersonal skills and communication issues that no one in the organization had raised previously.

26.     The Plaintiff was bewildered by this feedback as she never received such feedback from prior employers, colleagues or direct reports.  In fact, when the Plaintiff asked Defendant Goren to provide greater detail, she merely brushed her off and told her that she was "too busy in the weeds."  However, this was a mere pretext to mask her discriminatory animus against the Plaintiff.  In fact, Dr. Wright's 2019 Work Plan, which was endorsed by Defendant Goren, acknowledged that there were areas within her assigned territory that required her own personal deeper engagement and a long term substantive commitment to "lay the pathway for transformation."  As such, this level of engagement by Dr. Wright was required for her to succeed in her role and acknowledged by Defendant Goren.

27.     In light of this feedback, at the direction of Defendant Goren, Dr. Wright began to have lunch with all staff to increase face time with them on a personal basis rather than working lunches and even engaged a professional coach to assist her in this purported need for development as identified by Defendant Goren.  Notably, as Dr. Wright encouraged an open-door policy with her team, whenever she met with her staff they appeared very comfortable discussing all facets of their work experience and did not offer any areas of concern in Dr. Wright's leadership.

28.     In light of the work she was doing to address these pre-textual areas of concern identified by Defendant Goren, the Plaintiff was encouraged when she received her check-in for January 2019 to April 30, 2019.  Dr. Goren wrote that it "appears that Terri has been working on

11

her communication and relationship with her team and that things feel less charged than at the end of last year."

29.     During the June 2019 Board meeting, Dr. Wright presented her 2020 Census Plan to the Board which identified the significance of encouraging participation in the 2020 Census and approaches the Meyer Foundation could take to be the leader on this front.  Moreover, Dr. Wright led her team's presentation on redesigning the grant making process.  Both of these initiatives were not only approved by the Board, but received great praise.

30.     After receiving Board Approval during the June 2019 meeting, Dr. Wright dedicated her time to implementing the grant making process redesign with her team and continued her duties without any criticism or concern raised by her direct reports or Defendant Goren.

**Defendant Goren's Abrupt and Unlawful Termination of Dr. Wright**

31.     Without any notice, warnings or an opportunity to have any discussions regarding her termination, Defendant Goren abruptly terminated the Plaintiff pre-textually claiming she was being fired because of her purported ongoing interpersonal and communication skills.  When the Plaintiff asked for specific examples, Defendant Goren discriminatorily refused to provide any, something that she did not do with her Caucasian staff members.

32.     Further evidencing Defendant Goren's discriminatory set up of Dr. Wright, Defendant Goren continuously undermined Dr. Wright's authority with her team despite Dr. Wright's repeated complaints.  Specifically, Defendant Goren encouraged Dr. Wright's team to visit with her to discuss their roles, assignments and team dynamic.  When Dr. Wright requested to be involved in these discussions, Defendant Goren dismissed her requests.

12

**Dr. Wright's Severance Agreement with Defendant Meyer Foundation**

33.     In October 2019, Dr. Wright, seeking to avoid litigation over potential claims against Defendant Goren and the Foundation regarding the termination, negotiated and entered into a contract labelled as a severance agreement.  Critically important to Dr. Wright as part of the negotiations was a mutual non-disparagement clause due to her concerns with the pre-textual, false and subjective statements that Defendant Goren made about Dr. Wright's interpersonal skills.  Eventually, Dr. Wright was able to enter into an acceptable agreement with Defendant Meyer Foundation and Defendant Goren.

34.     The Agreement contained a Mutual Non-Disparagement Clause, which sets forth:

"You agree that you have not made and will not make, any false, disparaging or derogatory statements to any person or entity, including any media outlet, industry group or financial institution, regarding the Foundation or any of the releases, or about the Foundation's business affairs and/or financial conditions; provided, however, that nothing herein prevents you from making truthful disclosures to any governmental entity or in any litigation or arbitration. Likewise, the Foundation will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding you."

**Defendant Goren's Breach of Contract and Public Disparagement of Dr. Wright**

35.     The month following the parties' execution of the severance agreement, in or around early November 2019, Defendant Goren met with Dr. Madye Henson, former President and CEO of Washington Regional Association of Grantmakers ("WRAG") in her capacity as WRAG's Chair of the Board of Directors.

36.     During Defendant Goren's offsite meeting with Dr. Henson, Defendant Goren complained that she was feeling backlash from abruptly terminating Dr. Wright.  In response to Defendant Goren, Dr. Henson shared that many leaders in the community are questioning her

decision and believe that Defendant Goren's termination of the Plaintiff was discriminatorily motivated.

37.     During the conversation with Dr. Henson, Defendant Goren acknowledged that she sensed this was the perception but claimed that she had no option.  Defendant Goren disparaged and defamed Dr. Wright by falsely stating Dr. Wright was "toxic" fostered a "a negative climate" within the Meyer Foundation and had to be fired or two-thirds of the staff would leave.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Race Discrimination in Violation of 42 U.S.C. § 1981 as Against all Defendants)**

38.      Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 37, inclusive, as if fully set forth herein.

39.     Defendants' conduct, by and through its agents, in treating Plaintiff in the manner unequal to other employees, discriminatorily denied Plaintiff equal treatment on the basis of her race in violation of 42 U.S.C. § 1981 in the terms, conditions, privileges and enforcement of her Severance Contract that was entered into for that purpose.

40.     Defendants in failing to remedy the treatment to which Plaintiff was subjected, despite the Defendants' knowledge of the conduct, discriminatorily denied Plaintiff equal treatment on the basis of race in violation of 42 U.S.C. § 1981 in the terms, conditions, privileges and enforcement of her Severance Contract. Plaintiff was disparaged in violation of the terms of the Agreement due to the Defendants' racial animus against African Americans in violation of 42 U.S.C. 1981. The result of this violation has caused the Plaintiff to experience severe economic loss, reputational harm, emotional distress and depression.

14

41.     The discriminatory acts of the Defendants as described above were alleged to show the intentional and racially motivated decision of Defendants to violate the terms and conditions of the Severance Contract.  Defendants have not engaged in similar conduct related to non-African American employees.

42.     As a result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer past and future economic, physical, reputational and emotional harm.

43.     Defendants should be held liable on this count and Plaintiff should be awarded all appropriate relief.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Defamation as against Defendant Goren)**

44.      Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 43, inclusive, as if fully set forth herein.

45.     After the parties entered into a Severance Agreement with the Defendants, Defendant Goren falsely told Dr. Henson, a non-party to the Agreement, that Dr. Wright was "toxic" and created a "negative climate" at the Meyer Foundation during a business meeting involving WRAG.

46.     Defendant Goren's statement that she was "toxic" and created a "negative climate" within the Meyer Foundation is false and unsupported by any feedback she received during her tenure there not only by staff, but by Defendant Goren herself.   In fact, Defendant Goren made these false statements to mask her discriminatory decision to terminate Dr. Wright after many in the philanthropic sector began questioning her discriminatory animus.

47.     As a result of these defamatory statements, Plaintiff has and will continue to suffer financial loss and reputational harm into the foreseeable future.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Contract)**

48.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 47, inclusive, as if fully set forth herein.

49.     The parties entered into an agreement that explicitly provided that the Meyer Foundation "will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding" the Plaintiff.   Defendant Goren signed this agreement and was therefore aware of this material term.

50.     Despite this mutually agreed upon and material provision in the Agreement, the Defendants unequivocally breached the terms of the Agreement when Defendant Goren falsely told Dr. Henson that she had no choice but to terminate Dr. Wright because she was "toxic" and created  a "negative environment."

51.     As a result of the Defendants' breach of the Agreement, the Plaintiff suffered significant economic, reputational and emotional harm.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.     Declare that Defendants intentionally and willfully denied plaintiff equal rights in the making and enforcement of the Severance Contract by disparaging her on account of her race in violation of 42 U.S.C. § 1981;

B.     Declare the Defendants breached their mutually executed Severance Agreement by making false statements regarding the Plaintiff;

C.     Declare that Defendant Goren defamed the Plaintiff; and

D.     Award of compensatory damages to Plaintiff;

E.     Award of punitive and liquidated damages to Plaintiff;

16

F.     Award attorney's fees and costs;

G.     Award of interest and costs;

H.     Award such other relief in law or equity as this Court deems appropriate.

### **JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all questions of fact raised by her Complaint.

Dated:  New York, New York
        July 23, 2020

Yours etc.,

THE COCHRAN FIRM
Attorneys for Plaintiff


       /s/
DEREK S. SELLS
DC Bar # 420398
55 Broadway, 23rd Floor
New York, NY 10006
Tel No.:  (212) 553-9215
Fax No.: (212) 227-8763
Dsells@cochranfirm.com

<u>ATTORNEY'S VERIFICATION</u>

STATE OF NEW YORK   )
             ).SS:
COUNTY OF NEW YORK)

        The undersigned, an attorney, duly admitted to practice law in the Courts of the

State of New York and The District of Columbia, and hereby deposes and states that:

        I am the Managing Partner of THE COCHRAN FIRM, attorneys for the plaintiff in the

above action.  I have read the annexed COMPLAINT and know the contents thereof and the

same are true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.  My belief, as to those

matters therein not stated upon knowledge, is based upon the following: investigation, interviews

with client, records, reports, documents, correspondence, data, memoranda, etc., contained in the

file.

        The reason I make this verification instead of plaintiff, is that the Plaintiff resides out of

the County of New York, wherein I maintain my offices.

        I affirm that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
       July 23, 2020


                            _____/s/_____
                            DEREK S. SELLS

18

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

TERRI D. WRIGHT

    Vs.                                        C.A. No.       2020 CA 003266 B

EUGENE & AGNES E. MEYER FOUNDATION et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                      Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:  July 24, 2020
Initial Conference: 10:00 am, Friday, October 23, 2020
Location:   Courtroom 201
               500 Indiana Avenue N.W.
               WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

TERRI D. WRIGHT
   Vs.                                          C.A. No.      2020 CA 003266 B
EUGENE & AGNES E. MEYER FOUNDATION et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:  July 24, 2020
Initial Conference: 10:00 am, Friday, October 23, 2020
Location:   Courtroom 201
               500 Indiana Avenue N.W.
               WASHINGTON, DC  20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

CAIO-60

Filed
D.C. Superior Court
07/23/2020 21:47PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

------------------------------------------------------------X

TERRI D. WRIGHT
204 Beacon Place NE
Washington, DC 20011

Plaintiff,

-against-                                                    **VERIFIED COMPLAINT**

EUGENE & AGNES E. MEYER FOUNDATION,                           **Jury Trial Demanded**
1250 Connecticut Avenue NW
Suite 800
Washington, DC 20036

and NICOLA O. GOREN,
4228 Alton Pl NW
Washington, DC 20016

Defendants.

------------------------------------------------------------X

Plaintiff TERRI D. WRIGHT, by and through her counsel, THE COCHRAN FIRM, as and for her Verified Complaint against Defendants, respectfully sets forth and alleges:

**PRELIMINARY STATEMENT**

The Eugene and Agnes E. Meyer Foundation (hereinafter "the Meyer Foundation") was established in 1944 by Eugene Meyer, founder of the Washington Post, and his wife, Agnes E. Meyer, a tireless Civil Rights advocate. Since its inception, the Meyer Foundation had been a well-regarded philanthropic organization providing grants aimed at advancing charitable and educational initiatives within the District of Columbia metropolitan region, which encompasses the District of Columbia, Maryland and Northern Virginia.

In recent years, the Meyer Foundation has increased its focus on supporting grants aimed at addressing issues of racial inequity within the community it serves. In fact, while Dr. Terri Wright, Plaintiff, served as the Vice President of Program and Community, the Meyer

1

Foundation gave nearly $3.6 million in grants to organizations committed to advancing racial equity causes within the District of Columbia metropolitan area.   This significant accomplishment for the Meyer Foundation was possible through the work and contributions of Dr. Wright.

Despite the Meyer Foundation's external pledge to aid outside organizations with financial support dedicated to addressing issues of racial inequity, it has, under the direction of its current President and Chief Executive Officer, Defendant Nicola Goren, wholly failed in implementing racial equity within the Meyer Foundation itself.  This failure by Defendant Goren to address these issues evidenced her racial animus against Plaintiff.   It also presaged the termination of Plaintiff's employment, the subsequent breach of her contract, the violation of her Civil Rights and the making of false and defamatory statements about her.

Prior to Dr. Wright joining the Meyer Foundation, Defendant Goren had her staff engage in discussions surrounding racial equity within their work environment during the Summer of 2017.   During these discussions, several employees of color shared their own concerns and experiences regarding race issues within the Meyer Foundation after being encouraged to do so. However, many later felt that their concerns went disregarded and were done only as a ploy to make it appear as if the Meyer Foundation cared about issues of race inside the company.  These staff members felt the Summer of 2017 was merely an all "talk" endeavor orchestrated by Defendant Goren.   This sentiment was further reflected in the internal surveys staff were requested to complete in 2018.

Despite this culture, the Plaintiff was extremely productive in her work at the Meyer Foundation. She garnered Board support for many of her proposals and projects, fostered close relationships with her direct reports and introduced an efficient transition plan to assist the Meyer

Foundation in its rebranding campaign.  Dr. Wright's significant contributions to the Meyer Foundation were meaningless to Defendant Goren who made the decision to fire the Plaintiff without cause or justification.  As part of the termination process, Defendant Goren and the Meyer Foundation entered into a contract that set forth certain conditions to which each party was to be bound.  One of the provisions was that neither Defendant Goren nor the Plaintiff would disparage each other or the Meyer Foundation.  Ironically, despite Defendant Goren's profile on the Meyer Foundation's website which states, "I am rooted in integrity," she breached the contract and acted without integrity by telling the then President and CEO of the Washington Regional Association of Grantmaker's (WRAG), Dr. Madye Henson, that Dr. Wright was "toxic," created "a negative climate" at the Foundation and had to be fired.

This violation of the non-disparagement clause of the Contract was done with racial animus in violation of 42 U.S.C. 1981 which prohibits discrimination in the making and enforcement of contracts.  The discriminatory animus is clear since Defendant Goren has not disparaged any non-African American employee who has left the company, let alone any non-African American who left the company with a contract that specifically contained a mutual non-disparagement clause.  For example, in contrast to the defamation Defendant Goren heaped on Dr. Wright, Defendant Goren did not defame Dr. Wright's predecessor, a Caucasian man, who also separated from the company.

The way that Dr. Wright learned of this disparaging and defamatory commentary about her was by reading the allegations of a Civil Rights complaint that Dr. Henson, filed against Defendant Goren accusing Goren of orchestrating an illegal termination of Dr. Henson based on her race as an African American. This lawsuit, filed in the District of Columbia Superior Court, on June 30, 2020, bearing case number 2020 CA 002934 B, is against WRAG, Defendant Goren

3

(Defendant Goren is WRAG's Board Chair) and others alleging discrimination and retaliation. In the complaint, Dr. Henson, who had no prior relationship with Dr. Wright, made clear that during a one on one meeting with Defendant Goren, the topic of Dr. Wright's departure came up and in response Defendant Goren made disparaging comments that were in blatant violation of Dr. Wright's contract.

This lawsuit is brought to redress the harm done to Dr. Wright as a result of Defendant Goren and the Meyer Foundations' breach of contract, violation of civil rights and defamation.

## NATURE OF THE CLAIMS

1.      This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' conduct taken against the Plaintiff, including Defendants' defamation, violations of 42 U.S.C. §1981 and breach of contract.

2.      Defendants' conduct was knowing, malicious, willful, wanton and/or showed a reckless disregard for Plaintiff.  As a result, the Plaintiff has suffered and continues to suffer economic and non-economic damages, permanent harm to her professional and personal reputations as well as severe emotional distress.

## JURISDICTION & VENUE

3.       This Court has jurisdiction over this matter because the contract at issue lists the District of Columbia as having Jurisdiction.

4.      Venue of this action is based upon the contract at issue that lists the District of Columbia as being the proper place for Venue.

5.      Jurisdiction and venue in the contract at issue sets forth that: "[t]his revised letter agreement shall be interpreted and construed by the laws of the District of Columbia, without regard to conflict of laws provision.  You hereby irrevocably submit to and acknowledge and

recognize the jurisdiction of the courts of the District of Columbia, or if appropriate, a federal court located in the District of Columbia (which courts, for purposes of this revised letter agreement, are the only courts of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this revised letter agreement or the subject matter hereof."

## PARTIES

6.     Plaintiff, Dr. Terri Wright, is and was at the time of the occurrence a resident of the District of Columbia.

7.      Defendant Eugene & Agnes E. Meyer Foundation (hereinafter "Defendant Meyer Foundation") is a private charitable organization with its principal place of business at 1250 Connecticut Avenue, NW, Suite 800, Washington, DC 20003. At all relevant times, Defendant Meyer Foundation   entered into the Agreement at issue with the Plaintiff and participated directly in the defamation, breach of contract and violations of 42 U.S.C. § 1981.  Moreover, at all relevant times, Defendant Meyer Foundation employed Defendant Nicola Goren.

8.     At all relevant times, Defendant Nicola Goren ("Defendant Goren") was the President and Chief Executive Officer ("CEO"), and she participated directly in the defamation, breach of contract and violations of 42 U.S.C. § 1981.

## PROCEDURAL REQUIREMENTS

9.     All conditions and requirements precedent to the commencement of this action have been met.

## FACTUAL ALLEGATIONS

### Dr. Wright's Professional and Educational Background

10.     Dr. Wright has and continues to dedicate her professional career to advancing racial and social equity within historically challenged areas such as housing, education, economic well-being and public health.  In her pursuit of addressing these glaring inequities that plagued low-income and communities of color, Dr. Wright has held different leadership positions at various governmental, private and public institutions such as American Public Health Association ("APHA"), W.K. Kellogg Foundation, Michigan Department of Public Health and the Georgia Department of Health and Human Services.

11.     Examples of Dr. Wright's exemplary leadership and commitment are demonstrated by her accomplishments in each of the positions she has held.  For example, during Dr. Wright's tenure at APHA she spearheaded initiatives geared toward identifying the multiple forms of racism as social determinants compromising health and well-being in addition to retaining subject matter experts on the aforementioned to advance the Association's equity agenda.  And, prior to Dr. Wright's tenure at APHA, her work at the W.K. Kellogg Foundation included prioritizing the Foundation's internal diversity and inclusion efforts to help ensure its grantmaking was committed to initiatives focused on undoing racism and achieving equity. Moreover, while working at the Michigan Department of Public Health and Georgia Department and Health and Human Services/Public Health Division, Dr. Wright dedicated her role to ensuring women and children had quality access to healthcare despite their socioeconomic status or race.

12.     To this end, Dr. Wright was eager to pursue a new opportunity as Vice President for Program and Community at the Meyer Foundation which according to its stated mission and

6

history, advanced the causes that Dr. Wright loved regarding racial equity in housing, education, and economic well-being.

### Dr. Wright's Tenure at the Meyer Foundation

13.     As part of the Meyer Foundation's plan to better its grantmaking strategy, Defendant Goren hired Dr. Wright to lead the Foundation in a new strategic direction. Specifically, the Meyer Foundation was looking to change their grantees to whom it has traditionally provided funding, in favor of grantees committed to taking on a more active role of advocacy in pursuit of racial equity within the community.

14.     On account of Dr. Wright's stellar experience, she was selected to interview for the position of Vice President of Program and Community, which included undergoing five rounds of interviews with various Board Members, staff members, and Defendant Goren.  After successfully completing the interview process, Dr. Wright was hired in February 2018.

15.     When Dr. Wright came on board, she learned that she was hired to replace Rick Moyers, a Caucasian male, who previously held the title of Vice President of Program and Communications. However, in light of the Meyer Foundation's new direction, Mr. Moyers' previously held position was changed to reflect Dr. Wright's title at the time she was hired.

16.     Defendant Goren shared with Dr. Wright the circumstances behind Mr. Moyer's separation and the events leading up to her decision to terminate him. Nothing that Defendant Goren said about Mr. Moyers was disparaging, rather she made it appear as if his departure was just a disagreement over vision.  Defendant Goren was amiable regarding Mr. Moyer's termination allowing him  to leave the Meyer Foundation on his own terms that did not adversely affect his reputation within the philanthropic community.  In contrast, this was not the treatment that Dr. Wright received by Defendant Goren following her termination.

17.     In her role as Vice President of Program and Community, the Plaintiff was responsible for overseeing the Foundation's programs and community engagement efforts, which, included, but was not limited to the implementation and integration of the Foundation's key strategies of grant making, capacity building, collective action and advocacy across the region.  Dr. Wright oversaw all programming within the following territories: District of Columbia, Maryland and Northern Virginia.

18.     As soon as Dr. Wright came onboard, staff members confided in her the hardships that occurred under Defendant Goren's leadership which heightened during the Summer of 2017 and continued thereafter.  During this summer, many of the staff reported they went through "painful" and uncomfortable discussions relating to racial equity within the Meyer Foundation. These discussions were led by Defendant Goren.  But many of the participants felt that the concerns raised in the discussions fell on deaf ears as no meaningful change was implemented to address their shared complaints.  In fact, an African-American male staff member described these discussions as mere "talk" under the guise of making it appear as if the Meyer Foundation cared.

19.     Ultimately, in June 2018, Aisha Alexander-Young was hired to implement racial equity within the organization as the Senior Director of Strategy and Racial Equity.  One of Ms. Alexander-Young's first initiatives during her tenure was to launch a survey for the Meyer Foundation's employees.  The results, which came back some time in the Fall of 2018 showed that employees of color within the organization felt uncomfortable and believed that their race negatively impacted their work environment.  The feedback also documented a lack of trust in the leadership and management of the Foundation. In response, no meaningful action was taken to address these glaring issues.

8

20.     Moreover, in October 2018, one of the Meyer Foundation's African-American Program Assistants left the organization feeling as if she was being set up for failure on account of her race.  Upon Dr. Wright's hiring, Defendant Goren warned the Plaintiff that the employee may not be "well-suited" for the job and it was up to Dr. Wright to determine how she would manage the African-American Program Assistant.  When Dr. Wright met with this Program Assistant and assured her that she would work with her in keeping her job, the employee still did not feel comfortable and left the Meyer Foundation.  She complained to Dr. Wright that she felt she was being forced out because of her race and did not believe that Dr. Wright would have the authority to override the pervasive discrimination she was forced to endure.

21.     Although Dr. Wright addressed staff members' complaints about the hostile work environment to which they were subjected on account of their race, she did not create this toxic environment.  In fact, Dr. Wright excelled in her new role and worked with the staff to improve performance and to foster a racially equitable work environment.

22.     As part of her efforts to help the Meyer Foundation advance racial equity within the region, she developed a framework to facilitate the Foundation's transition of removing direct service grants and grantees from the Foundation's portfolio to allow for grantmaking aimed at combating systemic racism.  Dr. Wright's framework garnered Board support and the Board authorized funding to support her framework.  Moreover, in furthering the Foundations' vision, Dr. Wright established a mechanism to collect demographic data from prospective grantees to ensure the Meyer Foundation was working with minority owned and/or directed organizations.

23.     Moreover, during Dr. Wright's first year and a half at the Meyer Foundation, she spearheaded significant initiatives including the following:

9

- Formulating a strategy positioning the Meyer Foundation as taking the lead in developing a regional strategy amongst philanthropic organizations for the 2020 Census.

- Participating in and promoting the "Get Out the Vote" campaign both within the Foundation, and also throughout the region.

- Leading the philanthropic response to the 2018-2019 Federal Government shutdown by expediting grants to nonprofit organizations that provided direct services to assist those economically impacted by the Federal Government shutdown.

- Redesigning programmatic presentations for reviewing and approving prospective grantees by Board Members to increase efficiency focused on strategy and not tactics.

- Revamping the Program Associate Position to better meet the grant making needs of the program team and to optimize the current Program Associate's skillsets and experiences.

- Leading developmental work for new youth engagement focused on cultivating a new generation of community leaders and advocates.

24.      At the end of 2018, the Plaintiff received a favorable performance evaluation from Defendant Goren.  In addition, despite not having worked at the Meyer Foundation for an entire year, Defendant Goren gave Dr. Wright a raise in salary..

25.      Despite her accomplishments and accolades within her first year, Defendant Goren began to paper trail her in the feedback she provided during Dr. Wright's 2018 Year End Evaluation.  Defendant  Goren could not criticize Dr. Wright for her objective performance and instead praised her  for a "strong year," acknowledged that she "contributed to the advancement of [the Foundation's] mission, vision and goals," and stated that  "[a]s far as contributions and deliverables Terri hit the ground running as a VP and has been highly productive.  I appreciate having a partner who is on the same page in terms of the vision for our direction and our work, with a strong point of view in how to execute against that mission." She further lauded the Plaintiff for having "[d]eveloped and presented a cohesive request and plan for respectfully transitioning organizations that do not fit in the new strategy, which resulted in the Board

unanimously approving efforts to increase the grant target over two years and accommodate the transition." So instead of attacking Dr. Wright's objective deliverables for the Foundation, Defendant Goren raised subjective and false criticism aimed at interpersonal skills and communication issues that no one in the organization had raised previously.

26.     The Plaintiff was bewildered by this feedback as she never received such feedback from prior employers, colleagues or direct reports.  In fact, when the Plaintiff asked Defendant Goren to provide greater detail, she merely brushed her off and told her that she was "too busy in the weeds."  However, this was a mere pretext to mask her discriminatory animus against the Plaintiff.  In fact, Dr. Wright's 2019 Work Plan, which was endorsed by Defendant Goren, acknowledged that there were areas within her assigned territory that required her own personal deeper engagement and a long term substantive commitment to "lay the pathway for transformation."  As such, this level of engagement by Dr. Wright was required for her to succeed in her role and acknowledged by Defendant Goren.

27.     In light of this feedback, at the direction of Defendant Goren, Dr. Wright began to have lunch with all staff to increase face time with them on a personal basis rather than working lunches and even engaged a professional coach to assist her in this purported need for development as identified by Defendant Goren.  Notably, as Dr. Wright encouraged an open-door policy with her team, whenever she met with her staff they appeared very comfortable discussing all facets of their work experience and did not offer any areas of concern in Dr. Wright's leadership.

28.     In light of the work she was doing to address these pre-textual areas of concern identified by Defendant Goren, the Plaintiff was encouraged when she received her check-in for January 2019 to April 30, 2019.  Dr. Goren wrote that it "appears that Terri has been working on

her communication and relationship with her team and that things feel less charged than at the end of last year."

29.     During the June 2019 Board meeting, Dr. Wright presented her 2020 Census Plan to the Board which identified the significance of encouraging participation in the 2020 Census and approaches the Meyer Foundation could take to be the leader on this front.  Moreover, Dr. Wright led her team's presentation on redesigning the grant making process.  Both of these initiatives were not only approved by the Board, but received great praise.

30.     After receiving Board Approval during the June 2019 meeting, Dr. Wright dedicated her time to implementing the grant making process redesign with her team and continued her duties without any criticism or concern raised by her direct reports or Defendant Goren.

**Defendant Goren's Abrupt and Unlawful Termination of Dr. Wright**

31.     Without any notice, warnings or an opportunity to have any discussions regarding her termination, Defendant Goren abruptly terminated the Plaintiff pre-textually claiming she was being fired because of her purported ongoing interpersonal and communication skills.  When the Plaintiff asked for specific examples, Defendant Goren discriminatorily refused to provide any, something that she did not do with her Caucasian staff members.

32.     Further evidencing Defendant Goren's discriminatory set up of Dr. Wright, Defendant Goren continuously undermined Dr. Wright's authority with her team despite Dr. Wright's repeated complaints.  Specifically, Defendant Goren encouraged Dr. Wright's team to visit with her to discuss their roles, assignments and team dynamic.  When Dr. Wright requested to be involved in these discussions, Defendant Goren dismissed her requests.

**Dr. Wright's Severance Agreement with Defendant Meyer Foundation**

33.     In October 2019, Dr. Wright, seeking to avoid litigation over potential claims against Defendant Goren and the Foundation regarding the termination, negotiated and entered into a contract labelled as a severance agreement.  Critically important to Dr. Wright as part of the negotiations was a mutual non-disparagement clause due to her concerns with the pre-textual, false and subjective statements that Defendant Goren made about Dr. Wright's interpersonal skills.  Eventually, Dr. Wright was able to enter into an acceptable agreement with Defendant Meyer Foundation and Defendant Goren.

34.     The Agreement contained a Mutual Non-Disparagement Clause, which sets forth:

"You agree that you have not made and will not make, any false, disparaging or derogatory statements to any person or entity, including any media outlet, industry group or financial institution, regarding the Foundation or any of the releases, or about the Foundation's business affairs and/or financial conditions; provided, however, that nothing herein prevents you from making truthful disclosures to any governmental entity or in any litigation or arbitration. Likewise, the Foundation will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding you."

**Defendant Goren's Breach of Contract and Public Disparagement of Dr. Wright**

35.     The month following the parties' execution of the severance agreement, in or around early November 2019, Defendant Goren met with Dr. Madye Henson, former President and CEO of Washington Regional Association of Grantmakers ("WRAG") in her capacity as WRAG's Chair of the Board of Directors.

36.     During Defendant Goren's offsite meeting with Dr. Henson, Defendant Goren complained that she was feeling backlash from abruptly terminating Dr. Wright.  In response to Defendant Goren, Dr. Henson shared that many leaders in the community are questioning her

decision and believe that Defendant Goren's termination of the Plaintiff was discriminatorily motivated.

37.    During the conversation with Dr. Henson, Defendant Goren acknowledged that she sensed this was the perception but claimed that she had no option.  Defendant Goren disparaged and defamed Dr. Wright by falsely stating Dr. Wright was "toxic" fostered a "a negative climate" within the Meyer Foundation and had to be fired or two-thirds of the staff would leave.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Race Discrimination in Violation of 42 U.S.C. § 1981 as Against all Defendants)**

38.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 37, inclusive, as if fully set forth herein.

39.    Defendants' conduct, by and through its agents, in treating Plaintiff in the manner unequal to other employees, discriminatorily denied Plaintiff equal treatment on the basis of her race in violation of 42 U.S.C. § 1981 in the terms, conditions, privileges and enforcement of her Severance Contract that was entered into for that purpose.

40.    Defendants in failing to remedy the treatment to which Plaintiff was subjected, despite the Defendants' knowledge of the conduct, discriminatorily denied Plaintiff equal treatment on the basis of race in violation of 42 U.S.C. § 1981 in the terms, conditions, privileges and enforcement of her Severance Contract. Plaintiff was disparaged in violation of the terms of the Agreement due to the Defendants' racial animus against African Americans in violation of 42 U.S.C. 1981. The result of this violation has caused the Plaintiff to experience severe economic loss, reputational harm, emotional distress and depression.

14

41.     The discriminatory acts of the Defendants as described above were alleged to show the intentional and racially motivated decision of Defendants to violate the terms and conditions of the Severance Contract.  Defendants have not engaged in similar conduct related to non-African American employees.

42.     As a result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer past and future economic, physical, reputational and emotional harm.

43.     Defendants should be held liable on this count and Plaintiff should be awarded all appropriate relief.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Defamation as against Defendant Goren)

44.      Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 43, inclusive, as if fully set forth herein.

45.     After the parties entered into a Severance Agreement with the Defendants, Defendant Goren falsely told Dr. Henson, a non-party to the Agreement, that Dr. Wright was "toxic" and created a "negative climate" at the Meyer Foundation during a business meeting involving WRAG.

46.     Defendant Goren's statement that she was "toxic" and created a "negative climate" within the Meyer Foundation is false and unsupported by any feedback she received during her tenure there not only by staff, but by Defendant Goren herself.  In fact, Defendant Goren made these false statements to mask her discriminatory decision to terminate Dr. Wright after many in the philanthropic sector began questioning her discriminatory animus.

47.     As a result of these defamatory statements, Plaintiff has and will continue to suffer financial loss and reputational harm into the foreseeable future.

15

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

48.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 47, inclusive, as if fully set forth herein.

49.     The parties entered into an agreement that explicitly provided that the Meyer Foundation "will direct those officers, directors and employees with direct knowledge of this revised letter agreement not to make any false, disparaging or derogatory statements to any person or entity regarding" the Plaintiff.   Defendant Goren signed this agreement and was therefore aware of this material term.

50.     Despite this mutually agreed upon and material provision in the Agreement, the Defendants unequivocally breached the terms of the Agreement when Defendant Goren falsely told Dr. Henson that she had no choice but to terminate Dr. Wright because she was "toxic" and created  a "negative environment."

51.     As a result of the Defendants' breach of the Agreement, the Plaintiff suffered significant economic, reputational and emotional harm.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.     Declare that Defendants intentionally and willfully denied plaintiff equal rights in the making and enforcement of the Severance Contract by disparaging her on account of her race in violation of 42 U.S.C. § 1981;

B.     Declare the Defendants breached their mutually executed Severance Agreement by making false statements regarding the Plaintiff;

C.     Declare that Defendant Goren defamed the Plaintiff; and

D.     Award of compensatory damages to Plaintiff;

E.     Award of punitive and liquidated damages to Plaintiff;

16

F.      Award attorney's fees and costs;

G.      Award of interest and costs;

H.      Award such other relief in law or equity as this Court deems appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all questions of fact raised by her Complaint.

Dated:  New York, New York
        July 23, 2020


                                                Yours etc.,

                                                THE COCHRAN FIRM
                                                Attorneys for Plaintiff


                                                _____/s/_____
                                                DEREK S. SELLS
                                                DC Bar # 420398
                                                55 Broadway, 23rd Floor
                                                New York, NY 10006
                                                Tel No.:  (212) 553-9215
                                                Fax No.: (212) 227-8763
                                                Dsells@cochranfirm.com

17

<u>ATTORNEY'S VERIFICATION</u>

STATE OF NEW YORK   )
                    ).SS:
COUNTY OF NEW YORK)

   The undersigned, an attorney, duly admitted to practice law in the Courts of the

State of New York and The District of Columbia, and hereby deposes and states that:

  I am the Managing Partner of THE COCHRAN FIRM, attorneys for the plaintiff in the

above action.   I have read the annexed COMPLAINT and know the contents thereof and the

same are true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.   My belief, as to those

matters therein not stated upon knowledge, is based upon the following: investigation, interviews

with client, records, reports, documents, correspondence, data, memoranda, etc., contained in the

file.

  The reason I make this verification instead of plaintiff, is that the Plaintiff resides out of

the County of New York, wherein I maintain my offices.

  I affirm that the foregoing statements are true under the penalties of perjury.

Dated:  New York, New York
   July 23, 2020


          _____/s/_____
          DEREK S. SELLS

18